WEBSTER *v*. TELLE.

Opinion delivered April 23, 1928.

1. CONTRACTS—CONSTRUCTION BY PARTIES.—When the parties to a contract have given it a particular construction, such construction will generally be adopted by the court in giving effect to its provisions.

2. INSURANCE—ASSIGNMENT OF POLICIES.—Evidence *held* sufficient to justify a finding that there was an oral and equitable assignment of policies by insured to his wife.

3. INSURANCE—RIGHT OF INSURED TO ASSIGN POLICY.—Life insurance policies are choses in action, which the insured has a right to assign for a money consideration, or to give away, so long as the assignment does not involve an illegal, fraudulent, or wager transaction.

4. INSURANCE—ORAL ASSIGNMENT OF POLICY.—An oral assignment of a life insurance policy by insured to his wife is valid, notwithstanding a provision of the policy made for the benefit of the company, requiring a written assignment, where the company made no objection to a verbal assignment.

5. INSURANCE—WAIVER BY INSURER OF PROVISIONS IN POLICY.—Provisions in a policy of insurance made for the benefit of the insurer may be waived by the insurer.

6. APPEAL AND ERROR—EVIDENCE CONSIDERED ON APPEAL.—The Supreme Court will consider only the competent testimony in the record of a chancery court, or such only as the chancellor should have considered.

7. WITNESSES—COMPETENCY OF WIDOW.—A widow claiming to be beneficiary under her husband's life insurance policy is a competent witness in her own behalf and could testify to facts relative to her right, so long as she did not testify to transactions with or statements of her deceased husband.

8. WITNESSES—COMPETENCY OF WIDOW.—Testimony of a widow claiming to be beneficiary under life insurance policies of her deceased husband, that she was in possession of the policies prior to her husband's death, was competent and relevant.

Appeal .from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

*T. O. Abbott* and *C. B. Crumpler,* for appellant.

*John E. Harris* and *E. L. Compere,* for appellee.'

WOOD, J. On April 13, 1922, the Prudential Insurance Company of America, hereafter called company, issued two insurance policies to Edwin M. Telle, each in the sum of $5,000, insuring his life in favor of the Alexander Refining Company, Inc. Each of the policies contained the following provision:

"Change of beneficiary. If the right to change the beneficiary has been reserved, and if the insured shall have attained to majority according to the laws of the State in which insured resides, the insured may, at any time while this policy is in force, by written notice to the company at its home office, change the beneficiary or beneficiaries under this policy, such change to be subject to the rights of any previous assignee and to become effective only when a provision to that effect is indorsed or attached to the policy by the company, whereupon all rights of the former beneficiary or beneficiaries shall cease."

The right to change the beneficiary was not reserved in either one of the. policies. On October 14, 1925, the

company, at the request of Telle and of the beneficiary named in the policies, exchanged the beneficiary named by substituting the "executors, administrators or assigns" of the assured, instead of the beneficiary originally named. Telle obtained a loan on the policies in the sum of $638. In a financial statement made December 18, 1926, by E. M. Telle to the Exchange Bank & Trust Company of El Dorado, Arkansas among other things, is the following: "Life insurance carried for $15,000. Beneficiary, wife."

On January 11, 1927, Telle executed his last will and testament, which, among other things, provides:

"I have made my beloved wife, Bernice Phillips Telle, the beneficiary of three life insurance policies of $5,000 each (giving the date and number of the policies). All of these policies are in the Prudential Insurance Company of America. There is a loan of about $1,200 to be deducted from the total of $15,000. I request that from the proceeds she shall pay the National Bank of Commerce of El Dorado $7,500, due March 5, 1927. This is the amount that they have loaned Mrs. Telle on her house, No. 825 West Main Street, El Dorado, Arkansas. She loaned this amount to me, which I used in my business. * * * I appoint Mr. N. L. Webster of El Dorado, Arkansas, as agent to wind up the business. I regret exceedingly that some heavy investments in the year 1926 proved to be unprofitable and so depleted my cash balance to such an extent that I am unable to continue in business any longer. There will be a loss to the creditors, because the property will not sell at a forced sale for the actual cost price."

On the 12th day of January, 1927, Telle committed suicide at the Marion Hotel, Little Rock, Arkansas, while the policies of insurance named in the will were in full force and effect. On the 18th of January, 1927, the will of Telle was duly probated, and letters testamentary were issued on January 19, 1927, to N. L. Webster, the executor named in the will. Proof of death was sub-

mitted to the company, and it admitted liability on the two policies in the sum of $9,435.46. Webster demanded payment of the amount due under the policies as executor of the estate of Telle. Mrs. Bernice Telle, the widow, demanded payment to her of the amount due under the policies.

On April 26, 1927, the company instituted this action in the Union Chancery Court, naming the executor and Mrs. Telle as defendants. It admitted its liability under the policies and its willingness to pay the same to the person legally entitled thereto, and tendered into court the sum of $9,435.46, and prayed that Webster and Mrs. Telle be required to interplead for the funds in order that their respective rights be determined and that the company might pay the sum due under the policies to the person adjudged by the court to be entitled thereto.

N. L. Webster and Mrs. Telle each filed an interplea for the funds. Webster alleged that he was entitled to the funds under the will, in which he was named executor, and under the policies, by the terms of which the sums due under same were to be paid to him as executor. Mrs. Telle alleged that she was entitled to the funds as the beneficiary under the terms of the will, naming her as the sole beneficiary, and under the terms of the policies on the ground, as she alleged, that Telle, during his lifetime, had assigned and delivered the policies to her as security for certain money she had loaned him, and which was due at the time of his death. She further alleged that Telle, during his lifetime, by written declaration and by the solemn declaration made in his will on the day before his death, had made her the beneficiary in the policies. She alleged that any reasonable method adopted by her husband to make her the beneficiary under the policies would legally change the beneficial interest to her, and that she was entitled to recover both as equitable assignee and as substituted beneficiary.

Webster replied to the interplea of Mrs. Telle, denying its allegations.

It was conceded by the executor and Mrs. Telle that the sum of $9,435.46 was due under the policies, and this amount was paid by the company into the registry of the court, and the company was discharged from further liability under the policies. The action progressed between the interpleaders, the executor and Mrs. Telle, as to which of them was entitled to the fund in court. The cause was heard upon the pleadings and exhibits, the depositions of witnesses and an agreed statement of facts, and the court found in favor of Mrs. Telle, and rendered a judgment accordingly in the sum of $9,435.46, with interest, from which judgment N. L. Webster, the executor, duly prosecutes this appeal.

Learned counsel for the appellant, in their excellent brief, say: "There are but two issues involved in this appeal. The first issue is: Was there a change of beneficiary in the two life insurance policies in favor of appellee, prior to the death of Edwin M. Telle, the assured? The second issue is: Was there a debt owing by the assured at the time of his death to the appellee, and was there an assignment of the insurance policies to secure that debt?"

The conclusion we have reached on the first issue as stated by counsel makes it unnecessary to set out all of the testimony adduced on the second issue. The original beneficiary named in the policies was the Alexander Refining Company, Inc., which, at that time, was the employer of the assured, Edwin M. Telle.

The policies contain, among others, the following provision: "If there be no beneficiary living at the death of the insured, the amount of insurance payable shall be paid to the executors, administrators or assigns of the insured, unless otherwise provided in the policy. The right to change the beneficiary has not been reserved by the insured." Notwithstanding this provision of the policies, that "the right to change the beneficiary has not been reserved by the insured," it will be observed that the parties to the insurance contracts, to-wit, the

insurance company, the Alexander Refining Company, the beneficiary, and Edwin M. Telle, the insured, on October 14, 1925, agreed to change, and on October 19, 1925, did change the beneficiary from the refining company to "the executors, administrators or assigns of the insured." In making the change the provisions of the policies in regard to the change of beneficiary as set out above were followed. The parties therefore to the contracts of insurance seem to have treated the provisions of the policies with reference to change of beneficiary, where there was a change, as binding. Therefore, if it could be said that there had been a change in the beneficiary of the policies from the executors, administrator or assigns of the insured to the appellee, Mrs. Bernice Phillips Telle, then we would be inclined to follow the provisions of the contracts of insurance as construed by the parties themselves in order to effectuate such change. For the law is that, "when the parties to a contract have given it a particular construction, such construction will generally be adopted by the court in giving effect to its provisions, and the subsequent acts of the parties showing the construction they have put upon the agreement themselves are to be looked to by the court, and, in some cases, may be controlling." 9 Cyc. 588; 6 R. C. L. 862. But, as we construe the "change of beneficiary" clauses in these insurance contracts, there has been no change of beneficiary since the change was made from the refining company to that of "executors, administrators or assigns of the insured." The beneficiary in the policies at the time of Telle's death, if there had been no assignment of the policies, was his executor, the appellant. But, if the policies had been assigned by Telle to his wife, then the beneficiary was his assignee, Bernice Phillips Telle, the appellee.

This brings us to the question—and, as we view it, the only question—necessary to be decided in the case, to-wit, whether or not the beneficial interest under the policies had been assigned by the assured, Edwin M.

Telle, to his wife, Bernice Phillips Telle. The provision in the policies of insurance with reference to the assignment of such policies is as follows: "Any assignment of this policy must be in writing, and the company shall not be deemed to have knowledge of such assignment unless the original or a duplicate thereof is filed at the home office of the company. The company will not assume any responsibility for the validity of an assignment." This provision of the policies was not complied with by the assured, and the appellant therefore contends that there was no assignment of the policies. But the appellee contends that she was the assignee under the policies under an oral and equitable assignment thereof.

The competent testimony on this issue is substantially as follows: The appellee testified that the policies had been in her possession ever since three or four days before she executed a mortgage to the National Bank of Commerce, on January 5, 1926, at which time she examined each of the policies, and they are the policies which were delivered to her. She kept the policies a few days, but did not have any place to lock them up. She next saw the policies of insurance after her husband's death. The mortgage she referred to secured a loan by her from the National Bank of Commerce at El Dorado, Arkansas, in the sum of $7,500, due six months from date. The property contained in the mortgage constituted her individual property. She did not get the $7,500 for which the mortgage was executed, but her husband took the money and used it in carrying on his business. The insurance policies were delivered to her by Mr. Webster, after her husband's death, wrapped in his will, in a package sent to her from Little Rock, Arkansas, and addressed to her, and when she opened it there were these two policies and the will. No part of the $7,500 which she loaned her husband in 1926, which was borrowed from the National Bank of Commerce of El Dorado, and for which he gave a mortgage

on her El Dorado home property, had ever been paid to her.

The appellant, Webster, testified that the two life insurance policies were delivered to him by the coroner of Pulaski County, in a bundle with other papers. He delivered the insurance policies and all the papers in the package to Mrs. Telle, personally. He did this for the reason that there was a note left by Mr. Telle instructing that these papers be delivered to her.

The declaration in the financial statement made to the Exchange Bank & Trust Company by Telle, to the effect that he carried life insurance for his wife as beneficiary in the sum of $15,000, and also the statement in his will to the effect that his wife was the beneficiary of three life insurance policies in the sum of $5,000 each, have already been set forth. We are convinced that the above testimony is amply sufficient to justify a finding that, as between Telle and his wife, Telle had assigned the insurance policies to her. It was unquestionably the intention of Telle that the amounts due under these policies at the time of his death should be paid to his wife, the appellee. The evidence is susceptible of no other conclusion. True, Telle did not use in his will and in his financial statement the technical word "assign" in referring to the beneficial interest under the policies, but his meaning is clear that he intended that his wife should have the amount of the policies and that he had already made this provision for her. The testimony of Mrs. Telle shows that the policies had been delivered to her prior to Telle's death.

Now, the creditors of Telle had no interest whatever in his insurance policies as long as Telle was alive, because, as long as he was living, he had the right to assign the policies to whomsoever he desired, provided the assignment did not involve an illegal, fraudulent, or wager transaction. His life insurance policies were choses in action, which he had the perfect right to assign for a money consideration, or to give away. As was said

in *New York Mutual Life Insurance Company* v. *Armstrong,* 117 U. S. 591, 6 S. Ct. 877, 29 L. ed. 997: "A policy of life insurance without restrictive words is assignable by the assured for a valuable consideration equally with any other chose in action, where the assignment is not made to cover a mere speculative risk and thus evade the law against wager policies." And in *Page* v. *Metropolitan Life Insurance Co.,* 98 Ark. 340, 135 S. W. 911, we said: "A life policy is a chose in action, a species of property, which the holder may have perfectly good and innocent reasons for wishing to dispose of. * * * The insured had the same right to give as he had to transfer the policy for a valuable consideration." See also *Matlock* v. *Bledsoe,* 77 Ark. 60, 90 S. W. 848.

There is nothing in this whole record to indicate any fraud in the assignment by Telle of the policies in controversy to his wife. On the contrary, the provision he thus made for her by the assignment of his policies, under the circumstances which surrounded him, was exceedingly commendable. The amount of the policies which he maintained and which he assigned to her was certainly not indicative of any fraudulent purpose to deplete his estate to the injury of his creditors, but rather only to protect the one who was nearest and dearest to him, and who had rendered him every financial and other assistance in her power, and who, above all others, had an insurable interest in his life. Although there was no written assignment of the policies in controversy by Telle to Mrs. Telle, yet, as we have seen, there was an oral, and therefore an equitable, assignment of such policies. In *Citizens' Bank* v. *Moore,* 134 Ark. 554, 204 S. W. 619, we said: "We think the direction for a change in the beneficiary for the purpose of effecting an assignment thereof, together with the delivery of the original policy, constituted an equitable assignment, though not formally made in writing. Parol assignments of insurance policies, when accompanied by deliv-

ery, are sustained as equitable assignments thereof (Citing cases).'' That doctrine is applicable to the facts of this record.

But learned counsel for appellant contend that, under the written provisions of the policies set out above with reference to assignments, the policies could not be orally assigned. The language of this provision of the policies shows that it was made for the benefit of the company and not for the benefit of the beneficiary named, or for the assured, his executors, administrators or assigns.

In Cooley's Briefs on Insurance, vol. 2, page 1812, it is said:

''Though it is true in a general sense that, in order to effectuate an assignment of a policy, or any part of it, the terms and conditions imposed by the policy to accomplish that purpose must be complied with (*Metro. Life Ins. Co.* v. *Zgliczenski*, 94 N. J. Eq. 300, 119 A. 29), it is nevertheless a general rule that, where a company makes no objection to an assignment on account of a failure to comply with its rules in relation thereto, and the assignment is otherwise valid as between the parties in interest, no objection can be raised by any of them on account of such formal deficiencies.''

To support the text the following cases are cited: *Conway* v. *Supreme Council Catholic Knights of America,* 131 Cal. 437, 63 Pac. 727; *Diffenbach* v. *New York Life Ins. Co.,* 61 Md. 370; *Hewlett* v. *Home for Insurables,* 74 Md. 350, 24 Atl. 324, 17 L. R. A. 447; *Brierly* v. *Equitable Aid Union,* 170 Mass. 218, 48 N. E. 1090, 64 Am. St. Rep. 297; *Burgess* v. *New York Life Ins. Co.* (Tex. Civ. App.), 53 S. W. 602; *Kendall* v. *Morrison,* 33 Tex. Civ. App. 345, 77 S. W. 31. See also *New York Life Ins. Co.* v. *Rosenheim,* 56 Mo. App. 27, ''where the decision was placed rather on the ground of estoppel.''

It is the established doctrine of this court that provisions in a policy of insurance made for the benefit of the insurer may be waived by such insurer. *Ætna Life*

*Ins. Co.* v. *Duncan,* 165 Ark. 395-407, 264 S. W. 835. We
are aware of the doctrine announced by this court to the
effect that the change of beneficiary in a benefit certifi-
cate issued by a fraternal or mutual benefit society can-
not be made by the insured unless there is substantial
compliance with the by-laws and regulations of the
society. *Wilkes* v. *Hicks,* 124 Ark. 192, 186 S. W. 830;
*Robinson* v. *Robinson,* 121 Ark. 276, 181 S. W. 300;
*Sovereign Camp W. O. W.* v. *Israel,* 117 Ark. 121, 173
S. W. 855; *Caruth* v. *Clawson,* 97 Ark. 50, 133 S. W. 178.
Counsel for appellant invoke the doctrine of the above
cases to sustain their contention that there was no assign-
ment of the policies in the case at bar because the assign-
ment was not in writing, as the policies require. But
the doctrine of these cases has no application to ordinary
life insurance contracts or policies issued by standard
old-line life insurance companies. While the benefit cer-
tificates of fraternal and mutual benefit associations
insuring the lives of their members are contracts of insur-
ance upon which such societies or associations are liable
to the holders and beneficiaries of such certificates, never-
theless the character of the contracts is wholly different
from those of old-line standard life insurance companies.
The fraternal, mutual benefit associations are what their
names imply. Their policyholders are the only mem-
bers of the society. The obligations of their policies are
discharged by assessments upon their members, and all
of the members are mutually and reciprocally interested
in the conduct and management of the society accord-
ing to the constitution and by-laws which they have
framed and adopted for the government and conduct of
the association to which they belong.

Mr. Niblack, speaking of mutual benefit societies,
says: "A society may provide that its contract of insur-
ance may be assigned and transferred only with the
consent of the society indorsed thereon. * * * The right
of the contracting parties to thus prohibit an assign-
ment of the certificate without the consent of the society

cannot be seriously doubted, and, in view of the restricted nature of the mutual benefit insurance, the propriety, if not the necessity, of such a condition is equally clear. The personal character of each holder of a certificate and the interest he may have in the life of the person thereby insured are essential elements in the contract of mutual indemnity." Niblack, Accident Ins. & Benefit Societies, page 329, § 169. See also Vance on Insurance, page 400, where the author, after setting forth the relation existing between mutual benefit societies and their members, says: "From this statement of the relation between the mutual association and its members it is apparent that the contractual relation strikingly differs from that existing between regular insurance companies and their policyholders."

In *Robinson* v. *Robinson, supra,* speaking of the rights of the members and policyholders to change the beneficiary, we said: "Manifestly, however, such a transaction requires some formalities for the protection of the company, the member, and the beneficiary, and these formalities must be substantially complied with before the change of beneficiary becomes effective."

The doctrine of *Wilks* v. *Hicks, supra,* and the other cases *supra* relied on by counsel for appellant, cannot be extended or applied to policies of insurance like those under review here. The rule applicable here is that announced by Mr. Cooley and the cases cited by him, and is forcefully stated by the Court of Appeals of Maryland in *Diffenbach* v. *New York Life Ins. Co., supra,* as follows:

"Claiming, as the appellants do, under an assignment of policies of life insurance, the validity of which the insurance companies have not denied, but have paid the amounts secured by them into court for payment to whoever may be entitled, the legality of the transaction does not arise, as we think. The proceeds must be disposed of according to the equities of the complainants and defendants, respectively."

As was said by Judge MANSFIELD, speaking for the court in *McDonald* v. *Humphries,* 56 Ark. 63, 19 S. W. 234: "The company, having paid the money into court, was released from liability to either of the parties, and had no further interest in the litigation. The question which remained for the decision of the court involved only a proper disposition of the fund as between the plaintiff and the other defendant."

The assignment of the policies by Telle to his wife *ipso facto* made her, as his assignee, the beneficiary of those policies under their very terms. Thereafter, and at the time of his death, Telle had no interest therein, and of course the executor of his estate and the creditors had none, because they had only such rights as Telle himself had at the time of his death. In reaching the conclusion that the appellee, Mrs. Telle, was the assignee of Telle, and therefore the beneficiary of the policies, we have considered only the competent testimony in the record, or such only as the trial court should have considered under the rule announced in *Latham* v. *First National Bank of Fort Smith,* 92 Ark. 321, 122 S. W. 992, and *Cox* v. *Smith,* 99 Ark. 218, 138 S. W. 938, and *Martin* v. *Manning,* 124 Ark. 84, 186 S. W. 302. The appellee was a competent witness in her behalf, and she could testify to facts relevant to her rights, so long as she did not testify to transactions with or statements of the testator. As to these, to be sure, her testimony was incompetent. Constitution 1874, § 2 of the Schedule; *Wilson* v. *Edwards,* 79 Ark. 69, 94 S. W. 327; *Carter* v. *Younger,* 123 Ark. 266, 185 S. W. 435; *Free* v. *Maxwell,* 138 Ark. 489, 212 S. W. 325; § 4144, C. & M. Digest.

Under the above rule of the Constitution and statute, the testimony of the appellee, that she was in possession of the policies prior to the death of Telle, was competent and relevant. This testimony, in connection with the declarations made in the financial statement of Telle and in his will, to the effect that he had made his beloved wife, Bernice Phillips Telle, beneficiary in the

policies, and the testimony of appellant himself, to the effect that he had delivered the policies to Mrs. Telle in accordance with directions contained in a letter written to him by Telle on the day the latter died, proved that the appellee was the beneficiary of the policies.

We do not concur in the statement of counsel for appellant that the declarations of Telle, above mentioned, in his financial statement and in his will, were the result of a disturbed and disordered mind. On the contrary, it occurs to us that these declarations but stated a truth in fact and in law. It was conceded by the appellant that Telle was an intelligent business man. As such, he must have known that, under the terms of the policies in controversy, he could not have made Mrs. Telle a beneficiary merely by appointment, but that the only way she could be made beneficiary would be to assign the policies to her, which he had done. True, as before stated, he did not use the technical term "assignee," but he did state that he had made her the beneficiary in the policies, which, in the light of the policies themselves, necessarily meant that he had assigned the policies to her. The only reasonable conclusion to be drawn from all this testimony is that Telle knew that he had assigned the policies to his wife, and that he was holding the same for her at the time of his death. There is no merit whatever in appellant's contention that the appellee, in view of the above testimony, was but a pledgee of the insurance policies instead of absolute owner thereof. There is nothing in the testimony to justify the conclusion that Telle, at the time he declared that his wife was the beneficiary in the policies, intended thereby to constitute her only a pledgee for the payment of his debts. On the contrary, we are convinced that, when he had declared that she was the beneficiary and gave her possession of the policies, he intended, by this act of assignment in parol, to constitute her the beneficiary and absolute owner of such policies. There is no competent testimony in the

record tending to show that Telle had reserved any right to himself to revoke the parol contract of gift or assignment to his wife of the policies in controversy, and he never, up to the time of his death, asserted any such right. Therefore, at the death of Telle the rights of the appellee to the proceeds of the policies became fixed and binding upon the executor of the estate, and neither he, nor any creditor through him, has a right to assert to the contrary.

The decree of the trial court so holding is correct, and it is therefore affirmed.