HATFIELD *v.* SCHOOL DISTRICT No. 58.

Opinion delivered November 5, 1928.

R. W. Robins, for appellant.

J. C. & Wm. J. Clark, for appellee.

Mehaffy, J. School District No. 58, in Faulkner County, Arkansas, inhabited principally by negroes, entered into a contract with appellant, Lester Hatfield, for the erection of a school building for $12,949. The officials of the school district had given notice by publication, and Hatfield was the only bidder. Two of the directors were colored and one white. The contract was as follows:

"This agreement, made this the 26th day of May, 1925, by and between Lester Hatfield, hereinafter called the contractor, and the school directors of District No. 58, in the county of Faulkner, State of Arkansas, hereinafter called the owner, witnesseth: That the contractor and the owner, for the consideration hereinafter named, agree as follows:

"Article 1. The contractor agrees to furnish all necessary material and labor with which to construct a school building according to the plans and specifications as furnished by the State Department of Education of the State of Arkansas, and to do everything required by

the general conditions of the contract, the specifications and the drawings.

"Article 2. The owner agrees to pay the contractor in current funds, for the performance of this contract, the sum of $12,949, subject to additions and deductions as provided in the general conditions of the contract; provided any and all changes, additions, or deductions shall have been agreed to and signed by both parties; and to make payments on account thereof as follows: 85 per cent. of the value of all material and work put into the building, as the construction progresses.

"Article 3. That contractor agrees to complete the building ready for occupancy in..............working days from the date of contract.

"Article 4. The contractor and the owner agree that the general conditions of the contract, specifications, and the drawings, together with this agreement, form the contract, and that they are fully a part of the contract as if hereto attached.

"The contractor and the owner, for themselves, their successors, executors, administrators and assigns, hereby agree to the full performance of the covenants herein contained.

"In witness whereof they have hereunto set their hands and seals, the day and year first written above.

"Lester Hatfield, contractor.
"Jacob Brame.
"Troy C. Hill, owner.
"Lewis Mason."

Hatfield was paid $1,100 through the Rosenwald fund, and $867 out of the district's building fund, and when the building was completed the district issued and turned over to him school warrants amounting to approximately $10,987. The warrants were all in the same form, and the following is a copy of one of them:

"District School Fund, District No. 58
"No. 22.                              August 21, 1925.
"Treasurer of Faulkner County, Arkansas:
"Pay to Lester Hatfield, or order, the sum of twen-

ty-five ($25) dollars, for the construction of schoolhouse, out of the building funds.

(Signed) "Jacob Brame,
"Troy C. Hill,
"L. N. Mason,
"Directors."

Suit was brought by the appellee to prevent and restrain the contractor from collecting any warrants held by him and to restrain him from disposing of any warrants, and to enjoin the treasurer from paying the warrants, and asking judgment against Hatfield for the sum of $4,082.70. Appellee alleged that, while the contract mentioned the sum of $12,949, the bid of the contractor was for $6,500 cash, but that it was the understanding that he would be paid in school warrants over a period of 21 years.

The school district issued and delivered to Hatfield 21 warrants for $500 each, 18 warrants for $25 each, and one warrant for $32. The building was constructed and accepted by the district, and the payments of $1,100 and $867 were paid to the contractor upon the completion of the building. After the building was completed the district obtained two policies of insurance for $9,500. The district gave a mortgage to Hatfield to secure the payment of the warrants or the balance due for constructing the building.

The building was thereafter destroyed by fire, and Hatfield learned that the school directors had taken no steps to collect the insurance, and he employed an attorney and prepared proof of loss, which was signed by the directors.

The insurance companies declined to pay, and suit was filed against each of them. The suits were removed to the Federal court, and, after the removal to the Federal court, a compromise was effected whereby the insurance companies paid Mr. Hatfield $8,525. His attorney's fees were $850. When the settlement was made the insurance companies made their checks payable to the district

and Mr. Hatfield jointly. Therefore, in order to get the checks cashed, it was of course necessary to have them indorsed by the district, and, at the request of Mr. Hatfield, the president and secretary of the school board indorsed the checks and Mr. Hatfield received the money.

The plaintiffs alleged that Mr. Hatfield offered to construct the building for $6,500 cash, or for said sum plus 10 per cent. interest on deferred portions thereof; that it was estimated that the payment of said sum would have to be distributed over a period of 21 years, and that the accruing interest, at 10 per cent., would approximate $6,449; that in drafting the contract it was, by mistake, oversight or fraud, stipulated that the consideration for the performance of the contract to be paid Hatfield was $12,949.

The appellant filed his answer, denying all the material allegations in plaintiff's complaint. Thereafter an amendment to the complaint was filed, alleging that the Cleburne County Bank and Loyd's Investment Company, of Little Rock, were claiming some interest in the warrants, and asked that they be made parties defendant.

Appellee's witnesses testified that the price of $12,-949 was the cash price plus interest, and that the appellant gave them an estimate or made a bid of $6,500 cash. In addition to that, the county superintendent testified that he showed the plans to Hatfield, and that Hatfield bid $6,500 cash, and some other witnesses testified to the same effect. It is also shown that two or three houses similar to the one constructed by appellant cost approximately $6,500 each.

Troy C. Hill, one of the directors of District 58, testified that the minutes of the meeting at which bids were opened showed that Hatfield's bid was $12,949, and this was to be paid out of the building fund now on hand and out of the Rosenwald fund, and to be in warrants extending over a period of 21 years. The minutes also showed that a resolution was adopted to issue to Lester Hatfield 21 warrants in the sum of $500 each, 18 warrants in the sum of $25 each, and one warrant for $32, in full settle-

ment of the balance due him. That the warrants were duly issued and signed by each member of the board, and turned over to Hatfield, and were numbered one to forty, inclusive, the first 21 warrants being for the sum of $500 each. There is no dispute about this testimony nor about what the minutes show.

Hatfield testifies that his bid did not show that it was to be paid out of warrants extending over 21 years.

Appellant's witnesses testify that there was never a bid of $6,500, and that the only bid made was for $12,-949, and that that is what the contract shows.

The court, after hearing the evidence, entered a decree that plaintiff's complaint praying for reformation of contract and for money judgment against Hatfield, was denied, and dismissed for want of equity, but restrained Hatfield,.and the other persons who were made parties, from cashing or attempting to cash the school warrants in their possession, and ordering and directing them to surrender the warrants to the treasurer of Faulkner County. The treasurer of Faulkner County was ordered to cancel the warrants. From this decree this appeal was taken.

It is first contended by the appellant that the appellee sought to reform a written contract, and that the evidence was not clear, convincing and decisive, and, for that reason, the contract could not be reformed. Appellant cites numerous Arkansas cases where it has been held that the evidence to show fraud or mistake must be clear, unequivocal and decisive, but the chancellor did not reform the contract and did not undertake to reform it. What the court did was to construe the contract. If the board of directors had authority to make this contract and did make it, the law became a part of the contract.

"A school district or township can contract only in its corporate capacity, and has the power of entering into such contracts, and such only, as are expressly or impliedly authorized by a statute, and as are authorized by legal votes passed at a regularly called district meeting." 35 Cyc. 949.

If the board of directors passed a resolution authorizing the making of this contract, according to the undisputed testimony, that resolution provided for the payment of $12,949 over a period of 21 years. There can be no dispute about this. The testimony shows that this is what the minutes showed. It is also undisputed that 21 warrants were issued. The minutes record the action of the directors as a board. They provide for the payment over a period of 21 years. This is a limit on the authority of the directors to make a contract; a limit on the authority of the directors to make a contract and a limit of which the contractor must take notice.

"All persons dealing with district boards, committees or officers are bound to ascertain the limits of their authority as fixed by statutory or organic law, and are therefore chargeable with notice of any limitations thereon, as in respect to the amount they are authorized to expend." 35 Cyc. 951.

"The power of a district board, committee, or other officers to enter into a contract for the construction of a school building is controlled by statute, under which it is usually provided that a school board may enter into a contract for the erection of a schoolhouse only upon the petition or authority of the voters of the district, at an annual meeting on a designated day, and then only within the limits of the power so conferred; that such contract can be entered into only to the extent of funds provided and available for that purpose; or that no contract can be made relative to the erection of a school building, the cost of which will exceed the amount appropriated therefor or which will exceed a given amount." 35 Cyc. 951.

The contractor was bound to know and did know the amount of funds the district had on hand. He was bound to know the limit of the tax that could be levied and collected in the district, and was therefore bound to know that $500 annually was approximately the school revenue of the district for building fund.

"The directors have charge of the school affairs and educational interests in their districts, and the care and

custody of schoolhouses, grounds, and other property belonging to the district. But they have no power to purchase or lease in the corporate name a schoolhouse site, or to hire, purchase or build a schoolhouse with funds provided or to be provided by the district, unless thereunto authorized by a majority vote at the district meeting." *Arkansas National Bank* v. *School Dist. 99,* 152 Ark. 507, 238 S. W. 630.

Again, the warrants accepted by the contractor himself showed on their face that the payment was to be made out of the building fund. This building fund, or the amount of it, as the contractor was bound to know, was limited. Again, when the contract was completed, there was issued to and accepted by the contractor warrants payable out of the building fund, which could not have been paid for something like 20 years. It is true that the contractor says that the board of directors intended to organize a special school district so that they could borrow money, but, in the first place, they might have been unable to form a special school district, and, in the next place, there was no certainty that they could borrow the money if they did. And we are therefore of opinion that the contract itself, taken in connection with the law and the minutes of the board of directors, shows that the contractor did not expect, and that it was not the intention of the parties, that all of the warrants should be taken up at once or that the price should be paid in cash.

There are two important rules that it is well to keep in mind in construing any contract. One is that the intention of the parties is to be given effect, if it can be done consistently with legal principles; and another well established rule is that the construction that the parties themselves put on the contract is entitled to great weight. *Temple Cotton Oil Co.* v. *Southern Cotton Oil Co.,* 176 Ark. 601, 3 S. W. (2d) 673.

"For the law is that, when the parties to a contract have given it a particular construction, such construction will generally be adopted by the court in giving effect to

its provisions, and the subsequent acts of the parties showing the construction they have put upon the agreement themselves are to be looked to by the court, and, in some cases, may be controlling." *Webster* v. *Telle,* 176 Ark. 1149, 6 S. W. (2d) 28; 9 Cyc. 588; 6 R. C. L. 862.

Our conclusion is that the chancellor properly construed the contract. It is contended, however, by cross-appellants that they have overpaid the contractor, and that the chancellor therefore erred in refusing to enter a decree against the contractor for the amount claimed. Whatever payment was made was voluntarily made by the school board, and at the time it was made probably neither party had made any calculation as to its correctness.

It is the contention of the school district that the cash price agreed on was $6,500, and that the balance was interest calculated over a period of 21 years. So that, according to their own contention, what they are seeking to recover is interest that has already been paid to the contractor. The rule applies here that, where interest is paid in advance and the principal is paid before the time at which it was to be paid, no part of such interest can be recovered back.

"Where interest is given in advance on a note, and the principal is voluntarily paid during the period for which the interest was paid, no part of such interest can be recovered back, in the absence of a promise by the payee to return the unearned interest, or of a reservation of the right to bring suit within the time for which interest has been paid." 15 R. C. L. 13.

We have reached the conclusion that the decree of the chancellor is correct, and it is therefore affirmed, both on the appeal and cross-appeal.