TRIMBLE *v.* TRIMBLE.

Opinion delivered March 17, 1930.

*Sam W. Trimble* and *Reinberger & Reinberger,* for appellant.

*Wooldridge & Wooldridge,* for appellee.

MEHAFFY, J.  Robert W. Trimble and Hazel P. Trimble were husband and wife, and in 1923 the Mutual Life Insurance Company of New York issued a policy of insurance upon the life of Robert W. Trimble, Hazel P. Trimble being named as beneficiary.  The amount of the policy was $2,000.

Hazel P. Trimble brought suit in the Jefferson Chancery Court against Robert W. Trimble, and was granted a divorce in November, 1927.  At the time of the decree for divorce there was a property settlement between Robert W. Trimble and Hazel P. Trimble, but nothing was said at the time about the insurance policy.  Premiums had all been paid since the policy was issued in 1923. After the divorce was granted in November, 1927, Robert W. Trimble died on the 29th of June, 1928.

This suit was begun by Sam W. Trimble, as next friend of David L. Trimble, against the Mutual Life Insurance Company and Hazel P. Trimble, asking that the insurance policy issued in 1923 on the life of Robert W. Trimble be reformed so that the beneficiary would be David L. Trimble, instead of Hazel P. Trimble.

It was alleged that at the time of the divorce decree Hazel P. Trimble had possession of the insurance policy, and at that time requests were made for her to deliver said policy to Robert W. Trimble.

The Mutual Life Insurance Company answered, admitting the validity of the contract, and paid the face value of the policy into the court to be distributed to proper parties.

David L. Trimble is a minor, and a nephew of Robert W. Trimble, deceased, and the defendant, Hazel P. Trimble, is the divorced wife of Robert W. Trimble, deceased.

The insured, Robert W. Trimble, had the right under the policy to designate a new beneficiary. The policy, however, provided that he might do this by filing written notice with the home office, accompanied by the policy for suitable indorsement; that the change in beneficiary should take effect upon the indorsement of the same on the policy by the company.

The only question for this court to determine, as stated by the appellant, is who is entitled to the proceeds of the policy? The chancery court found in favor of the divorced wife, Hazel P. Trimble, and the decree was entered accordingly.

It is contended by the appellant that the deceased, Robert W. Trimble, intended to change the name of the beneficiary under the policy, and that he filled out and signed the necessary papers and delivered them to the representative of the company. It is conceded that he did not deliver them to the home office, as required by the policy, and that he did not deliver the policy for the indorsement to be made on it by the company. Appellant says that it is true that the testimony is disputed as to whether deceased ever tried to obtain the policy from appellee, but that the preponderance of the testimony shows that the insured did make repeated requests and demands upon appellee for the policy, and that appellee gave as an excuse for the failure to deliver the policy that it was lost. The only evidence offered by appellant

as to any requests made of appellee were statements of witnesses that the deceased, Robert W. Trimble, had told them that he intended to change the policy and make David L. Trimble the beneficiary, and that the deceased had also told some of the witnesses that the appellee claimed the policy was lost, and refused to make the affidavit required in case of lost policies. There is no witness who testifies that a request was ever made to appellee to deliver the policy or to make an affidavit, but, on the contrary, she swears positively that no such request was ever made of her. She swore she did not know where the policy. was, but it was afterwards found in her mother's safety deposit box.

Appellee testified that she had never been called upon by the deceased during his lifetime to do anything relative to changing the beneficiary in this policy. The deceased had from November, 1927, until June, 1928, to get the beneficiary changed, and he did not do this. The evidence of the witnesses who testify to statements made by him, fix the time as some time in the spring of 1928, and there is no evidence of his ever making any other effort. There would have been no difficulty in deceased securing the policy at the time of the divorce decree and the property settlement if he had desired to do so. Moreover, he had ample time, after witnesses say that he announced his intention to change the beneficiary, to do so before his death, and did not do it.

The chancery court had jurisdiction to reform the instrument, but we do not agree with appellant that the evidence shows any fraud upon the part of the appellee, or any mutual mistake, or any mistake on the part of any of the parties.

It is contended by appellant that the evidence clearly shows the intention of the deceased to change the beneficiary. The most that can be said of this is that some time in the spring deceased talked to several witnesses, stating to them that he intended to make the change. The undisputed fact, however, is that he did not make the

change, and, so far as the record shows, no further effort was made on his part to do this. Not only this, but the appellee testifies positively that he never called on her for the policy, or for the affidavit, or for anything with reference to changing the beneficiary. It is, however, contended that what he did constituted an equitable assignment of the policy, and the case of *Webster* v. *Telle*, 176 Ark. 1149, 6 S. W. (2d) 28, is cited and relied on as supporting this contention. But the court said in that case:

"But, as we construe the change of beneficiary clauses in these insurance contracts, there has been no change of beneficiary since the change was made from the refining company to that of executors, administrators or assigns of the insured. The beneficiary in the policies at the time of Telle's death, if there had been no assignment of the policies, was his executor, the appellant. But, if the policies had been assigned by Telle to his wife, then the beneficiary was his assignee, Bernice Phillips Telle, the appellee."

There was in the above case, we think, much stronger evidence of an intention to change the beneficiary than in the instant case, and yet this court held outright that there had been no change in the beneficiary, and, if the policy had not been assigned, that the beneficiary was the executor of the appellant. The court in the *Webster* v. *Telle* case further said:

"The appellee testified that the policies had been in her possession ever since three or four days before she executed a mortgage to the National Bank of Commerce, on January 5, 1926, at which time she examined each of the policies, and they are the policies which were delivered to her. She kept the policies a few days, but did not have any place to lock them up. She next saw the policies of insurance after her husband's death. The mortgage she referred to secured a loan by her from the National Bank of Commerce at El Dorado, Arkansas, in the sum of $7,500, due six months from date. The property contained in the mortgage constituted her individual prop-

erty. She did not get the $7,500, for which the mortgage was executed, but her husband took the money and used it in carrying on his business. The insurance policies were delivered to her by Mr. Webster, after her husband's death, wrapped in his will, in a package sent to her from Little Rock, Arkansas, and addressed to her, and, when she opened it, there were these two policies and the will. No part of the $7,500 which she loaned her husband in 1926, which was borrowed from the National Bank of Commerce of El Dorado, and for· which he gave a mortgage on her El Dorado home property, had ever been paid to her.''

And the court, after quoting some further of the testimony in the case, said:

''We are convinced that the above testimony is amply sufficient to justify a finding that, as between Telle and his wife, Telle had assigned the insurance policy to her. It was unquestionably the intention of Telle that the amounts due under the policies at the time of his death should be paid to his wife, the appellee. The evidence is susceptible of no other conclusion.''

It will therefore appear from the decision in the case of *Webster* v. *Telle, supra,* that there was no change in the beneficiary, but that Telle had borrowed $7,500 from his wife, and had delivered to her the policy to secure the payment of this money to her. The court held that there was an equitable assignment, although it was held that there was no change of beneficiary except by the assignment.

Numerous cases are. cited to the effect that the requirement of an insurance policy as to the change of beneficiary must be complied with strictly before the change will be binding. In the instant case there is no contention that the provisions of the policy were complied with. It is conceded that they were not complied with.

''The cause being in equity for the purpose of determining the rights between the two sets of claimants, the

proceedings must be governed by equitable principles. Hence it is unnecessary to discuss or determine what the rule at law is or should be. The established rule and the one adopted in this State is that the change of the beneficiary cannot be made by the insured unless there is substantial compliance with the by-laws and regulations of the society.'' *Robinson v. Robinson,* 121 Ark. 276, 181 S. W. 300.

In another case decided by this court, it was said: ''It is not claimed that the insured changed the beneficiary during his lifetime. Indeed, the statement of facts show the contrary to be true.'' *Watkins v. Home Life Ins. Co.,* 137 Ark. 207, 208 S. W. 587, 5 A. L. R. 791.

In the instant case, the undisputed facts show that there was no change of beneficiaries during the lifetime of the insured, and of course there could be no change of beneficiary after his death.

It is next contended by the appellant that the doctrine of equitable estoppel is applicable, and it is stated that the undisputed facts show that appellee had possession of the policy from the time of the divorce decree until after the death of the deceased; that repeated requests were made to her by the deceased and by her own attorney for the delivery of the policy to the deceased, and that she refused to deliver it. We do not agree with appellant in this contention. The undisputed facts did not show that any request was ever made to her by the deceased, and there is nothing in the evidence to show an estoppel.

It cannot be said that any of the contentions made by appellant are established by the undisputed facts in the case. The undisputed facts, however, do establish the fact that the deceased, during his lifetime, never effected a change of beneficiary.

We do not deem it necessary to either set out the testimony or to discuss the authorities further that are cited and relied on by the parties. The undisputed facts in the case show that there was no change in the ben-

eficiary made during the lifetime of the insured, and none could be made after his death. There is no evidence tending to establish fraud or misconduct on the part of the appellee that would have prevented the deceased during his lifetime from making the change. Some witnesses, to be sure, testify that the deceased told them that he had requested the policy to be delivered to him and appellee had refused, but her testimony contradicts this, and we think the overwhelming weight of evidence supports the finding of the chancellor, and the decree is therefore affirmed.