HOUSTON *v.* CARSON.

4-9634                                        244 S. W. 2d 151

Opinion delivered December 17, 1951.

666

*Ernest Briner*, for appellant.

*McDaniel & Crow,* for appellee.

MINOR W. MILLWEE, Justice. On November 10, 1937, appellees, Sam D. Carson and wife, executed a note for $900 to W. E. Carson and wife, Alice Carson, payable one year after date and bearing ten per cent interest after maturity. On the same date appellees also executed a mortgage on certain lands in Saline County as security for payment of the note.

W. E. Carson died in November, 1941, and his widow, Alice Carson, died testate in September, 1948. Appellants are the three children and sole heirs of W. E. and Alice Carson, deceased, and two of them are also executors of the Alice Carson estate. On October 21, 1948, they instituted this suit, both as executors and heirs, against appellees to foreclose the 1937 mortgage alleging a past due indebtedness of $848.95.

In their answer, appellees admitted execution of the note and mortgage, but denied the indebtedness and pleaded full payment. After most of the proof had been taken on depositions, appellees filed a cross-complaint alleging overpayment of the indebtedness and asking judgment for any excess payments disclosed by the testimony. Appellants' reply denied these allegations and also pleaded the statute of non-claim. Trial by depositions resulted in a decree dismissing the complaint and cross-complaint for want of equity.

Appellants presented documentary proof showing eight payments endorsed on the note and mortgage record by W. E. Carson and wife, Alice Carson, from December 15, 1938, to March 24, 1945. There is no dispute as to the correctness of any of these credits except the second payment on April 20, 1939, which appellants claim was in the sum of $250 as shown by endorsements

on the note and mortgage record, while appellees contend they should have been credited with a payment of $600 on said date. If appellees are correct in their contention, they overpaid the indebtedness by $24.07 when they made the last payment of $100 on March 24, 1945. If, on the other hand, proper credit was given for the April, 1939, payment, appellants are entitled to judgment as prayed.

Since the execution of the note and mortgage was admitted by appellees, the burden of establishing their affirmative defense of payment rested upon them. *McDonald* v. *The Olla State Bank,* 192 Ark. 603, 93 S. W. 2d 325. The only question on this appeal is whether the chancellor's finding that appellees discharged this burden is contrary to the preponderance of the evidence.

The parties to the suit and most of the witnesses on both sides are closely related and the testimony as to the amount of the April, 1939, credit is sharply conflicting. Appellees were operating a farm in March, 1939, when Sam D. Carson accepted a position with the State Welfare Department. A son and a daughter of appellees testified that W. E. Carson came to their home in his automobile about the first of April, 1939, and had a conversation with their father in which an agreement was made whereby the latter would turn over to the former his team of mules, wagon and a small amount of other farm equipment and receive a credit of $600 on the note; and that the only persons present when the conversation took place were appellees, their son and daughter and W. E. Carson who was not accompanied by his wife, Alice Carson. When asked to relate the agreement in her own way, the daughter of appellees first testified that W. E. Carson agreed to take the farm equipment, sell it, "and give my father credit for whatever he got for it on the note Uncle Will had of my father's." She later stated that the agreement was for a credit of $600 and that W. E. Carson came and got the equipment about two days later.

A Benton livestock dealer testified on behalf of appellees that he lived near them in 1939; that the mules were then about nine or ten years old and worth about

$225 to $250; and that all the farming equipment, including the mules, was then worth about $500 or $600. Another livestock dealer who had no knowledge of the specific property testified generally as to the 1939 market value of the equipment as described and fixed by the first dealer. Appellees say these were the only witnesses testifying to any material facts in the case who were not related to the parties; and that the testimony of appellees' children as to the agreement to credit the note with a $600 payment in April, 1939, is wholly uncontradicted. We cannot agree with either contention.

Insofar as the evidence discloses, there was no dispute as to the correctness of the $250 credit endorsed on the note and mortgage record until after the death of Alice Carson in 1948. Appellees made six payments on the note after April, 1939, and it is not shown that there was any objection to the credits shown when they made the last payment of $100 on March 24, 1945, which payment they now contend overpaid the debt. The evidence discloses that W. E. Carson and wife carefully kept their business records and were very indulgent in dealing with their relatives. In addition to the credit endorsements on the note and mortgage record, appellants introduced other evidence which strongly contradicts the testimony adduced by appellees as to the alleged agreement by W. E. Carson to credit the note with a $600 payment in April, 1939.

There was considerable testimony showing that W. E. Carson was in bad health from 1938 until his death, that he did not drive an automobile during that time, and that his wife assisted him in all his business transactions. Pinky Franklin, a Negro, was employed by W. E. Carson from 1938 to 1940 and lived on Carson's place. He testified that he did all the driving for W. E. Carson during that period and that he never drove him to appellees' farm. There was other evidence by witnesses who were thoroughly familiar with the team and other equipment surrendered by Sam D. Carson in April, 1939, which shows the value of such property to have been considerably less than the $250 credit endorsed on the note by W. E. Carson and on the mortgage record by Alice Car-

son. Some of these witnesses were related to the parties on both sides while some of them were unrelated to any of the parties. These witnesses testified that the two mules were more than twenty years old in 1939 and were not worth more than $100. Leon Ramsey testified one of the mules was three years old when he purchased it in 1918 and that he sold it to appellee, Sam D. Carson, in 1927. There was other testimony showing the other mule was equally as old. Alice Carson sold the two mules, harness and wagon for $115 in February, 1942. The purchaser testified that one of the mules died that fall and the other shortly thereafter. There was other evidence tending to show that appellee, Sam D. Carson, delivered the farm equipment to W. E. Carson in April, 1939, when he accepted employment with the Welfare Department, and that appellees were to receive a credit of $250 as endorsed on the note and mortgage record.

After the above evidence was adduced by appellants, appellees' son and daughter gave further depositions in which they somewhat modified their former testimony by stating that a Negro drove W. E. Carson to appellees' farm in April, 1939, and was present when the agreement as to the $600 credit was made. They further stated that their younger sister was also present, after the latter testified that she also heard the agreement. Although they could not identify the driver of the car, they stated that they had observed him and another Negro, who they stated came and got the team and equipment, working in and around the W. E. Carson store in Benton.

Evidence on behalf of appellants was to the effect that W. E. Carson operated a store in Benton for many years prior to September, 1938, when the business was incorporated and J. W. Johnson took over as manager. Johnson and Thelma Ramsey, who had been employed in the store since 1929, testified that no Negroes were employed at the store, that appellees' family did not trade there, and that W. E. Carson was very feeble and did not work at the store after September, 1938.

In making their proof, both sides were somewhat handicapped by the rule embodied in § 2 of the schedule

of the Arkansas Constitution, often referred to as the dead man's statute. Appellees say the statute prevented them from testifying in the case and that it also rendered incompetent the entire testimony of appellant, Lorene Houston, an executrix of the estate of Alice Carson, deceased. But the statute does not go so far as to render a party within its terms absolutely incompetent as a witness. A party may testify so long as he does, not testify against the other "as to any transaction with or statements of the testator, intestate or ward. . . ." *Chipman* v. *Perdue,* 135 Ark. 559, 205 S. W. 892; *Webster* v. *Telle,* 176 Ark. 1149, 6 S. W. 2d 28. Appellants contend that since Lorene Houston sued in the dual capacity of executrix and heir, her testimony as an heir is in no manner restricted by operation of the statute. Appellants would be correct in this contention if Lorene Houston, as executrix, was only a nominal party to the suit. But we have held that the administrator or executor of a deceased mortgagee's estate is a proper party to bring a foreclosure suit. *Swinton* v. *Cuffman,* 139 Ark. 121, 213 S. W. 409. Even though the statute is applicable to Lorene Houston, much of her testimony was, nevertheless, competent while some of it was inadmissible on grounds other than the disqualification imposed by the statute. After disregarding those statements by W. E. Carson and Alice Carson to Lorene Houston and other witnesses which were in the nature of self-serving declarations, we are still of the opinion that appellees have not discharged the burden of proving the alleged $600 payment by a preponderance of the evidence.

The decree is accordingly reversed and the cause remanded with directions to enter judgment for appellants and for such further proceedings as may be necessary.