ÆTNA LIFE INSURANCE COMPANY OF HARTFORD CONN.,
v. DUNCAN.

Opinion delivered July 14, 1924.

1. PLEADING—MOTION TO MAKE MORE SPECIFIC PROPERLY DENIED.—In an action on a life insurance policy, the court did not err in denying insurer's motion to make the complaint more specific where it alleged the issuance of the policy, payment of premiums, insured's death, and beneficiary's compliance with the policy as to notice of death and demand of payment, which was refused.

2. INSURANCE—MODE OF PROVING DEATH.—Where a life insurance policy did not require that proof of death should be made in any particular manner or at any particular time, any method is sufficient which serves to furnish insurer with notice and proof of insured's death.

3. INSURANCE—PROOF OF DEATH—SUFFICIENCY.—Evidence that beneficiary's attorney had written to insurer at its home office, notifying it of insured's death, together with a telegram of insurer to its general manager, held to show that insurer had notice of insured's death.

4. INSURANCE—WAIVER OF PROOF OF DEATH OF INSURED.—Where an insurer had actual notice of insured's death, its denial of liability, not predicated on a failure to furnish proof of loss, and its failure upon request to indicate that further proof would be required, waived any right to other or further proof of death.

5. INSURANCE—REINSTATEMENT OF POLICY.—Where insured had permitted a life insurance policy to lapse because of nonpayment of premium, his offer to pay part of premium in cash and to sign a note for the balance if insurer would reinstate his policy, when accepted by the insurer and executed by him, reinstated the note.

6. INSURANCE—WAIVER OF PROVISIONS OF POLICY.—Provisions in a policy made for the benefit of the insurer may be waived by it.

7. INSURANCE—DEATH OF INSURED BEFORE DELIVERY OF NOTE.—Where insured was killed after he had executed a note in part payment of a premium of life insurance but before he had delivered it, such fact was immaterial, since, in signing the note pursuant to the agreement to reinstate it, he bound his estate for its payment as if he had delivered it to insurer before his death.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris*, Judge; affirmed.

*J. A. Sherrill*, for appellant.

The court erred in giving a peremptory instruction in favor of the plaintiff. Where the insurer and the insured, by their acts, indicated that they considered a policy of insurance as having lapsed, the court will follow the construction of the contract adopted by the parties themselves. 109 Ark. 17; 6 R. C. L. 616. Authority to solicit insurance, receive and write applications, forward them to insurer's general office, receive and deliver policies and collect premiums, would not empower an agent to continue in force a policy which, by its terms, had become null and void because of nonpayment of premium when due, nor to waive proof of loss within the time and manner prescribed by the policy. 85 Ark. 337; 14 R. C. L. 986. Death of a party before acceptance of an offer is communicated to offerer is invalidated by lapse. 9 Cyc. 293. If payment of premium has not been made before the death of the assured, the policy is forfeited, and no tender to or acceptance by an agent authorized only to receive premiums will defeat the forfeiture. 90 Ill. App. 576. If check is given as conditional payment only and is not in fact paid until after the death of the insured, there can be no recovery. 7 Ont. A. M. 171. There can be no reinstatement after the death of the insured, while the policy is suspended on account of default. 90 Ill. App. 576; 86 S. W. 618; 93 S. E. 60; 95 Va. 579; 29 S. E. 328, 83 Fed. 631. An offer to restore on receipt of a premium in default, if sent at once, is not a continuing offer, and delay in taking advantage of the offer defeats the privilege. 24 N. W. 604. Intention to deliver, not carried out, will not constitute a delivery. 54 S. W. 414. Delivery is necessary to divest the title of the legal owner of a note. 7 Ark. 376; 17 Ark. 96. Though a contract is signed by a party, it is not executed until delivered. 122 S. W. 384. The theory that the premium as it becomes due is a debt is a fallacious one and leads to erroneous conclusions. A

debtor is under obligation to pay.   Here no obligation exists.   Payment of premium is entirely optional with him who is to pay.   41 Conn. 372; 73 N. Y. 480.

*Gray & Morris* and *Emerson & Donham,* for appellee.

The court will not explore the record to discover an error of the trial court where the appellant neglects to set it out in his abstract.   88 Ark. 449; 100 Ark. 328. No matter what the form of the notice of loss may be, if it operates to bring the attention of the insurer to the loss it is sufficient, and, where the nature of the notice is not prescribed, it may be oral.   14 R. C. L. 1338; 33 C. J. 16; 195 S. W. 535; 5 Joyce on Insurance, § 3277, p. 5470.   A denial of liability, not predicated upon the failure to furnish the proof of loss, is a waiver of a defense upon that ground.   94 Ark. 21; 79 Ark. 266; 121 Ark. 422; 58 So. 345.   Where the minds of the insured and insurer, for a valuable consideration, have met upon all terms of the contract, the contract is complete and enforceable.   66 Ark. 612; 149 Ark. 257; 149 Ark. 517; The general agents did not exceed their authority.   76 Ark. 328; 126 Ark. 360; 94 Ark. 578.

WOOD, J.   This is an action by Mrs. Rozell Duncan against the Ætna Life Insurance Company (hereafter called company), on a policy of life insurance issued by the company on November 11, 1920, insuring the life of her husband, Jerry C. Duncan, in the sum of $6,000, in which policy she was named as the beneficiary.   She alleged the death of her husband on June 17, 1922, set up the policy, and alleged that the premiums had been paid; that the company had due notice and proof of death, and had refused to pay the amount due on the policy.   The company moved to make the complaint more definite and certain by stating the date on which the last premium was due and the date upon which it was paid, if paid, and the date and manner of delivery of said payment, and whether the consideration was other than cash, and moved to require the plaintiff to exhibit all original letters

from the company, or to state their substance, or to state the substance of the agreement, if verbal, to accept the consideration for the premium. The court overruled the motion.

The company answered, admitting the issuance of the policy, but denied due notice and proof of death, and denied that the premium necessary to keep the policy in force had been paid before the death of Duncan, and averred that the policy therefore had lapsed, and had never been reinstated, and denied liability on the policy. The policy was introduced by the plaintiff. Without setting forth all of its provisions *in haec verba,* those material to this controversy are in substance as follows:

In consideration of an annual premium of $134.76 to be paid in advance, at its home office or to its agent, on the 11th day of November in each year, during the life of the assured, it insures the life of Duncan in favor of his wife in the sum of $6,000, payable upon receipt at the home office of due proof of the death of Duncan. If any subsequent premium was not paid when due, then, after the grace period of thirty-one days, the policy lapsed. The policy provided that, within five years after default in any premium payment, it could be reinstated upon evidence of insurability satisfactory to the company and the payment of arrears of premiums, with interest at the rate of six per cent. per annum.

The policy contained these further provisions: "No renewal premium shall be considered paid unless a receipt shall be given therefor, bearing the original or lithographed signature of the secretary or assistant secretary of the company, and countersigned by the agent."

"All agreements made by the company are signed by its president, vice president, secretary, assistant secretary, treasurer, or assistant treasurer. No other person can alter or waive any of the conditions of this policy or make any agreement which shall be binding upon the

company.'' There was a provision making the application for insurance and the policy the entire contract between the parties. In the application is a statement by the assured acknowledging that all policies and agreements made by the company are signed by one or more of its executive officers, and that ''no agent or other person not an executive officer can grant or waive any condition of its policies, or make any agreement which shall be binding upon said company.''

The undisputed facts are as follows: The first premium was paid, and the policy was in force from November 11, 1920, to November 11, 1921. The premium was not paid on the latter date. On April 20, 1922, Duncan wrote Campbell & Hart, State agents and managers of the company, a letter in which he acknowledged receipt of their letter of April 18 in regard to the reinstatement of his policy. In this letter he stated that the soliciting agent, Harmon, had told him that he could renew by making a note, and he requested the managers, if this were satisfactory, to send him a note due November 15, 1922. In reply to this letter Campbell & Hart wrote: ''Beg to advise that your policy was reinstated on April 11. We inclose herewith extension note, which, if you will sign and return to us with partial payment of $25, will extend the balance of your premium to June 11. When this note falls due, by making another partial payment of $25 we can extend the final balance to August 11.''

On April 24, 1922, Duncan wrote in reply to this letter, stating that he could not send the money, and if the company would not take his note he would let his insurance drop. In reply to this, the managers wrote on April 26, telling Duncan that, if he was unable to make the payments as outlined in the previous letter, that was the only way they could handle the matter, and it would be best for him to wait until fall and then advise if he could make the payments, and they would give the matter prompt attention. On May 20, 1922, the managers

wrote Duncan that his policy, which had been *recently reinstated, had again lapsed* for the nonpayment of the reinstatement premium, and inclosing a form for reinstatement for Duncan to fill out and return, if he was ready to pay the premium and reinstate the policy, and concluded by saying, "We will make an effort to get the company to reinstate it." On May 23, 1922, Duncan answered, acknowledging receipt of letter and blank form, and stated, "Am sending you check for $25, dated June 1," and requesting the managers to send him a note to sign for the balance. The application for reinstatement referred to in the letter of May 20, above, was introduced, and is as follows:

"Approved............................

"Brief Reinstatement Application No. 266970 S

Jerry C. Duncan.

Ætna Life Insurance Company, Hartford, Conn.

Lapsed November 11, 1921.

Canceled Lap. May, 1922.

Date reinstatement June 7, 1922.

Unpaid premiums due (See margin) $134.76.

Premium Int. $1.35.

Net payment $136.11.

Agent, Campbell & Hart, managers.

Examined by Pearl.

Application received, record made June 1, 1922.

No record—L. B., June 1, 1922, A. G. P."

Then follow questions with reference to the health of the assured and his occupation, and various other questions, on which no issue is based in the case, and then the following recital: "I further agree that said contract shall not be considered reinstated by reason of any cash paid or settlement made in connection with this application unless this application is approved for reinstatement by an executive officer of the company at its home office, and the payment of the full amount of all unpaid

premiums and interest made within thirty-one days from the date of the company's reinstatement receipt, and before said receipt, properly signed by an executive officer, is actually delivered to me, and then on the express condition that I am in sound health on the date of said delivery, which I expressly represent myself to be by accepting said receipt. It is hereby understood and agreed that, if this application is declined, or if the company's reinstatement receipt is delivered to me while I am not in sound health, any payment made on account of this application is to be returned to me upon demand, and the said receipt shall be surrendered to the company.

"(Signed) J. C. DUNCAN.

"P. O. Address, England, Ark. Dated May 23, 1922."

On June 10, 1922, the managers wrote Duncan the following: "The company has agreed to reinstate your policy No. 266970, the amount due being $136.11. We will hold your check for $25 to apply on this amount, as soon as we have received the remittance for the balance, when receipt will be forwarded and your policy will be put in full force and effect."

In answer to this letter, Duncan wrote, June 12, 1922, saying: "Your letter of the 10th just received, and will say you wrote me if I would send $25 you would take a note for the balance, and you have not sent the note. Now if you can't take a note, just return my $25, as I have no more money to pay out now." The agents answered this letter on June 16 as follows: "In reply to your letter, we inclose herewith extension note covering the balance of *your reinstatement premium*, which, if you will sign and return to us, will extend this balance to August 7. When this note falls due, by making a partial payment of $25 we can extend the balance to October 7."

Mrs. Duncan testified that her husband was killed instantly on June 17, 1922, between 12:30 and 1 o'clock. She identified a note which her husband had signed on that day about 12 o'clock, which note is as follows:

"Form No. 71A.

Must be signed by same person who signs the form No. 71.

Net premium................$136.11     Number of policy S-266970.
Cash pay't. (if any)   25.00     Premium fell due 6/7/1922.
Balance ..........................  111.11     Ext'sion matures 8/7/1922.
Interest added.............   1.11     I have this day 6/15/1922
Amount due...................  112.22     signed form as described
                                          hereon.

              "General                        Insured or
"Attest............................ Agent............................ Beneficiary
                              (Sign here)
(Indorsed on face in red ink "Reinstatement").

     "IMPORTANT—This form must be signed on or before
the days of grace expire.  Interest is added for exten-
sion of time hereby authorized.

"Form No. 71         Edition Feb. 1922.
"$112.22.                                                     ⌐ ⌐ ⌐ ⌐ |

     "In consideration of an extension of time for pay-
ment of reinstatement premium due 6/7/1922 under
policy No. S-266970, I agree to pay said premium and
interest, amounting to one hundred twelve and 22/100
dollars, to Campbell & Hart, agent of the Ætna Life
Insurance Company of Hartford, Conn., at its office in
Little Rock, Ark., on or before August 7, 1922.

     "This agreement, with a cash payment of $25, being
given to extend time for payment of said renewal
premium, it is understood that, if the sum named is not
paid when due, said policy shall then cease and determine,
except for the nonforfeiting provisions (if any) to which
said policy was entitled when the premium fell due, and
this agreement shall be canceled; and it is also under-
stood that this extension shall not exceed sixty days from
the date when said premium fell due, anything to the
contrary herein notwithstanding.

              " x   J. C. Duncan     Insured or Beneficiary.
" x Must be signed on both lines marked x
(Indorsed on face in red ink) "Reinstatement."
(Indorsed on back in red ink).
"Insured (or beneficiary) must sign his name in two
places."

She identified her husband's signature to the note, and testified that she delivered the same to Harmon, the local agent of the company, the day her husband was killed. Her husband had intended to mail the note. She further testified that Mr. Hart, one of the managers of the company, came down to her home about a month or six weeks after her husband's death to get the details, and she told him all about it.

Harmon testified in substance that he was agent of the company, and that he solicited Duncan's application for the insurance in controversy; that he went to Duncan's on the day he was killed, shortly after the killing, and received the note above mentioned from Mrs. Duncan, which he forwarded to the general managers, explaining the circumstances of Duncan's death, and requesting them to forward the necessary blanks, and that he would attend to the matter to the best of his ability. He identified the telegram which was sent by the company from Hartford on September 22 to Campbell & Hart. The telegram stated, "Will advise you fully Duncan case in few days." The witness made the contents of the telegram known to Mrs. Duncan. Witness testified, on cross-examination, that he accepted the note mentioned from Mrs. Duncan, and sent the same to the managers, because of his friendship for the Duncan family and at Mrs. Duncan's request. He was a soliciting agent, and had no authority to act as an agent for the company in settling the claim. It was not his duty to collect premiums, though sometimes, as an accommodation to his friends, he did so, and remitted same to the company. All the business of the company in the State was handled through Campbell & Hart, by whom witness was employed.

Witness Morris testified that he was employed as an attorney for Mrs. Duncan to collect her insurance. He wrote two letters to the company at its home office, concerning the policy in controversy, and stating that he understood that proof of death had been furnished, and that the beneficiary desired to know if the claim would

be paid without litigation. . He testified that he offered to make any proof of death demanded, and requested the company to send him a form so that he might make the proof in the usual course. He did not get a reply to his letters.

Hart testified for the company that he was a manager, and that he made a personal investigation of the case in controversy; that he was informed by Mrs. Duncan as to all the facts with reference to the death of her husband. He received the note signed by Duncan which had been introduced in evidence, and also received a check for $25, dated June 1, and inclosed in Duncan's letter of May 23. He retained the note and check until after the suit was brought. He was authorized to and did solicit Duncan to reinstate his lapsed policy. The application for reinstatement had to be submitted to the company for its decision. The general managers are authorized to reinstate when the company sends down a reinstatement receipt. The managers then advise the policyholder to send in his premium and that the reinstatement will then be sent him. The application for reinstatement of Duncan went to the home office of the company, and they sent witness a reinstatement receipt, with instructions that, upon collecting the premium, he could then send the reinstatement receipt to Duncan, at which time the policy would be reinstated. The only agreement witness ever made with Duncan was that, if he would pay the premium. either by note or cash, the policy would be reinstated. Witness had to hold the check until he could tell whether the company would approve the application or not, and, when the company approved the application for reinstatement, he demanded the remainder of the premium, and never cashed the check because the balance of the premium was never paid. Witness identified and introduced in evidence the reinstatement receipt which was sent witness, to be delivered to Duncan when the premium was paid, which is as follows: "Reinstatement receipt. Ætna Life Insurance Company, Hartford, Conn., June 7, 1922. In consideration of the application

for the reinstatement of Contract No. S-266970 on the life of J. C. Duncan, England (herein called the insured), which reinstatement application is dated May 23, 1922, and is hereby referred to and made a part of this contract, and of $136.11 to be paid within thirty-one days from this date, and before the delivery of this reinstatement receipt, the Ætna Life Insurance Company reinstates said contract from the date this receipt is actually delivered to the insured, on the express condition, and the representation by the insured, that the insured is then in sound health, otherwise this reinstatement to be null and void. Not binding without date of payment and signature of agent here. Received payment this —— day of ——, 192—, subject to the above terms.

"Agent. Payment for November 11, 1921. L. R."

Upon the above facts the plaintiff prayed the court to instruct the jury to return a verdict in her favor, which prayer the court granted. The court instructed the jury to return a verdict in favor of the plaintiff in the sum of $6,000, with interest at the rate of 6 per cent. per annum from October 31, 1922, and twelve per cent. of the $6,000, less the sum of $136.11, with interest from November 11, 1921, at the rate of 6 per cent. per annum. The defendant also prayed the court to instruct a verdict in its favor, which prayer the court refused, to which ruling the defendant duly excepted. The defendant also prayed for other instructions, which the court refused, and to which rulings the defendant duly excepted. The jury returned a verdict in favor of the plaintiff as directed. Judgment was entered in accordance with the verdict. from which is this appeal.

1. The court did not err in overruling the appellant's motion to require the appellee to make her complaint more specific. The allegations of the complaint, showing the policy issued, the premiums paid, the death of the assured, and a compliance of the appellee with the requirements of the policy as to notice of the death and demand of payment, which was refused, definitely state a cause of action against the appellant, and its answer

admitting the issuance of the policy and denying the other allegations of the complaint raised the issue upon which the testimony was adduced covering all the grounds of appellant's motion. The complaint was sufficiently specific to call for the proof which was adduced to support the appellee's contention, and it was unnecessary and improper to set forth in the complaint the proof or evidence to be adduced.

2. The policy required the appellant to pay the amount named therein "upon receipt at its home office of due proof of death of Jerry C. Duncan." The policy does not require that proof of death shall be made in any particular manner, or at any particular time. No method is specified for making the proof. In the absence of a specific requirement of the policy as to a particular method to be pursued, any method is sufficient which serves to bring home to the insurer notice and proof of the death of the assured. The testimony of the appellee's attorney to the effect that he had written the appellant at its home office, notifying it of the death of Duncan and offering to make proof of death in any way demanded, and asking the company if it intended to resist the payment to the beneficiary of amount claimed under the policy, together with the telegram of the company to its general managers stating that it would advise them fully within a few days what to do with the Duncan case, show conclusively that the company had notice of the death of Duncan at its home office. "No matter what the form of the notice may be, if it operates to bring the attention of the insurer to the loss, it is sufficient, and, where the nature of the notice is not prescribed, it may be oral." 14 R. C. L. 1338, § 507; 33 C. J. 16, § 664; see also *Jackson* v. *Life & Annuity Assn.*, 195 S. W. 535; 5 Joyce on Insurance, p. 5470, § 3277. The appellant having notice of the death of Duncan, its denial of liability, not predicated upon a failure to furnish proof of loss, and its failure, upon request, to indicate that further proof of loss would be required, constituted a waiver of any right to any other or further proof of loss. *Dodge*

v. *Thomasson*, 94 Ark. 621.   See also *Security Mut. Ins.
Co.* v. *Woodson*, 79 Ark. 266; *Equitable Surety Co.* v.
*Bank of Hazen*, 121 Ark. 422.

3.  The real crux of this lawsuit is involved in the
contention of the appellant that, at the time of the death
of Duncan, the contract of insurance had lapsed because
of the nonpayment of the premium due November 11,
1921, and that the policy had not been reinstated, and was
not in force, on the 17th day of June, 1922, when Duncan
was killed, and therefore that appellant was not liable.
The undisputed testimony shows that the premium due
November 11, 1921, was not paid, and therefore the pol-
icy, by its express terms, lapsed after the thirty-one days
of grace period.   The policy provides that, after default
in premium payment, it may be reinstated upon evidence
of insurability satisfactory to the company, and by pay-
ment of arrears of premium, with interest at the rate of
six per cent. per annum.   We are convinced that the
undisputed testimony shows that there was a completed
contract for reinstatement of the policy, according to
its terms, before Duncan was killed.   Learned counsel for
appellant contends that there was no receipt of the re-
newal premium signed by the secretary of the company and
countersigned by the agent; that there was no agreement
signed by the president, vice president, secretary, assist-
ant secretary, treasurer or assistant treasurer, showing
the reinstatement of the policy; that no one of the execu-
tive officers of the company signed or approved any appli-
cation or agreement for a reinstatement of the policy,
and that therefore the requirements of the contract of
insurance in these respects were not complied with.   But
all of the above provisions were made for the benefit
of the appellant company, and they could be waived by
the company.   The undisputed testimony shows that
these provisions were waived.   The testimony of Hart,
of Campbell & Hart, appellant's general agents and
managers for the State of Arkansas, shows that they were
authorized to solicit the reinstatement of policies, and
to reinstate the same when the company sent down a

reinstatement receipt showing that the application for reinstatement had been approved by the company. The correspondence in the record between the appellant's general agents and Duncan, set out above, shows that, prior to May 20, 1922, Campbell & Hart had solicited Duncan to reinstate the policy, and had reinstated the same on April 11 until June 11, on condition that he pay $25 in cash and sign a note for the balance of the unpaid premium. But Duncan wrote them that he could not send the money, and that, if they could not take his note, he would let his insurance drop. The result of these negotiations was that Duncan permitted the reinstatement of April 11 to lapse because he failed to comply with the conditions prescribed for the payment of the premium. On May 20 the general agents renewed their solicitation to Duncan to again reinstate, and inclosed him a blank for that purpose, stating that they would endeavor to get the company to reinstate the policy. Duncan, in answer to this letter, wrote the agents, on May 23, acknowledging receipt of the letter and blank, and inclosed a check for $25, dated June 1, and requesting them to send him a note to sign for the balance. While the letter does not so state, the indisputable inference is that he also returned the application duly filled out and signed. This letter of May 23 contained a definite offer on the part of Duncan to pay the company $25 in cash and to sign a note for the balance of the premium if they would reinstate his policy. The subsequent correspondence and the record made on this application in the office of the company shows that the company accepted Duncan's offer and reinstated the policy. This record shows that the policy had lapsed on November 11 and was canceled, and the clear inference was that it had been reinstated, and again lapsed in May, 1922; that an application was received for reinstatement and a record made thereon June 1, 1922; that the application was examined and the policy reinstated June 7, 1922. The correspondence and testimony of Hart show clearly that the company had accepted Duncan's offer and reinstated the policy on

condition that he pay the balance of the premium, and it
sent its general agents a reinstatement receipt; that the
general agents were authorized, after getting this receipt,
to further negotiate with Duncan as to when and to
whom he should pay the balance of the premium. This
they did, as shown by their letters of June 10 and 16,
1922, in which they told him that they would hold his
check for $25 and take his note for the balance. The last
act of Duncan immediately before his death was to com-
ply with the request of the general agents of the appel-
lant to evidence his indebtedness to the company for the
balance of the premium by signing a note therefor to
Campbell & Hart. True, this note was not delivered to
the company or its general agents until after Duncan's
death, but, when he signed it, he evidenced his obligation
to pay the balance of the premium in that form, and there
was no revocation of this note prior to his death. After
his death it was delivered to the general agents of the
company, who retained both the note and the check for
$25 without offer to return same until after this action
was instituted.

Now, the above undisputed testimony shows that
Duncan's offer to the company was to pay $25 in cash and
to sign a note for the balance of the premium if the com-
pany would reinstate his policy. The company accepted
the $25 and reinstated the policy, and Duncan signed the
note for the balance of the unpaid premium. Thus the
minds of the parties had fully met on the terms of the
contract of reinstatement, and this contract had been con-
summated before Duncan's death. The company, on its
part, had reinstated the policy, and, in consideration of
this reinstatement, Duncan, on his part, had paid $25 in
cash and executed his note for the balance. But, even
if he had not executed the note, he would have been bound
for the balance of the premium. The signing of the note
simply evidenced his indebtedness for the amount which
he was due, even before he signed the note. Because the
company, as the record shows, had carried out its part
of the contract in reinstating his policy, and he was due,

in consideration therefor, the balance of the premium to be evidenced by the note. The death of Duncan before the note was actually delivered was wholly immaterial, because his act in agreeing to sign the note and in signing same as effectually bound his estate for the payment of the unpaid premium as if the same had been delivered to the company before, and not after, his death.

The case is controlled on the facts by the doctrine of our cases to the effect that, where the minds of the insured and the insurer, for a valuable consideration, have met upon all the terms of the contract, the contract is complete and enforceable, even though it was intended by the parties to be evidenced by a writing, which writing, because of some fortuity, was not delivered before the death of the insured. *Mutual Life Ins. Co.* v. *Parrish,* 66 Ark. 612; *Jenkins* v. *International Life Ins. Co.,* 149 Ark. 257. To be sure, if the appellant had not accepted the insured's application for reinstatement on the terms offered by him, and had not actually reinstated his policy on June 7, 1922, the case would be entirely different. But the record shows that the company did accept his terms, and that the policy was actually reinstated on June 7, 1922. The very last letter written by the general agents to Duncan on June 16, 1922, the day before he died, shows that they considered that the policy had already been reinstated. They speak of the note which Duncan was to sign as the note "covering the balance of your reinstatement premium," all of which shows conclusively that the general agents themselves, who were authorized to accept the note for the balance of the unpaid premium on reinstatement, considered the contract for reinstatement as already consummated.

There are no errors in the rulings of the trial court, and its judgment is therefore affirmed.