THE PACIFIC FIRE INSURANCE COMPANY *v.* THE MURDOCH COTTON COMPANY.

4-4467

Opinion delivered December 14, 1936.

*Milsaps Fitzhugh, James G. Coston* and *J. T. Coston,* for appellant.

*D. F. Taylor* and *D. Fred Taylor, Jr.,* for appellee.

BUTLER, J. The appellee, Murdoch Cotton Company, was the owner of thirty-three bales of cotton which it had purchased from customers of the Smith Gin Company in October, 1935. This cotton was purchased while it was on the platform of the gin company and remained there preliminary to its delivery to the railroad for shipment. During this interval it was destroyed by fire and this action was instituted against the appellant, Pacific Fire Insurance Company, to recover its value plus penalty and attorney's fees. At the conclusion of the introduction of testimony, both parties moved for a directed verdict. The trial court, thereupon, made the following declaration of law and finding of fact:

"The court finds under the evidence in this case that the plaintiff is entitled to recover the amount sued for plus twelve per cent. penalty and attorney's fees of

$............., and that under the law in this State and under the facts that the plaintiff is entitled to recover.

"The court finds that the cotton in controversy was owned by the plaintiff at the time of the fire, but was in the custody of the Smith Gin Company.

"The court in this case is of the opinion that it is immaterial whether the Smith Gin Company is liable to the plaintiff or not; that plaintiff is entitled to recover against the insurance company regardless of the liability of Smith; but if it was necessary for the Smith Gin Company to be held liable for the cotton the court finds that there is sufficient evidence to show negligence on the part of the Smith Company to make liable to the plaintiff."

Thereupon, the court rendered judgment for $2,198.57, for the property destroyed, and also for twelve per cent. penalty in the sum of $263.83, and attorney's fee in the sum of $219.85.

There are two contentions made on appeal for a reversal of the judgment. The first is that under the policy of insurance and the evidence adduced there is no liability for the loss of the cotton. The policy involved is what is known as a "floating" policy which insured the Smith Gin Company, together with a number of other gin and lumber companies, against loss "on cotton in bales, their own or held in trust or on consignment or for which assured may be liable, and/or assured's interest as bailee, all while contained in or around gin houses and/or platforms, yards, and in warehouses of assured's as hereinafter provided and/or in transit from the premises covered hereunder to any railroad station or river landing and to cover at such railroad points or river landing until bill of lading has been issued, but in no event to cover after such bill of lading has been issued."

The testimony, as presented in this record, is somewhat confusing, but, viewed in the light most favorable to the appellee with all of the inferences reasonably deducible therefrom, it tends to show that prior to 1935 cotton was held for a reasonable length of time on gin platforms for owners who had had the cotton ginned. Purchasers of cotton from the grower, however, were re-

quired to pay a certain storage charge, and insurance carried for their benefit, but owing to the fact that new gins had been erected and competition between the ginners had become keen, the right of free storage of customers had been extended to the purchasers. The idea was that it would be an inducement to farmers to gin at any particular gin if they knew that their cotton could be readily sold on the gin platform. Under this custom the ginner would hold the cotton for a reasonable length of time free of storage charges and until the buyer had had a reasonable opportunity to deliver the cotton from the platform to the shipper, and insurance carried be for benefit of both customer and buyer. In other words, after the sale of the cotton the same relation existed between the ginner and the purchaser which had existed between the ginner and the individual whose cotton had been ginned and placed on the gin platform.

The cotton in controversy had been purchased from a number of the customers of the Smith Gin Company while on the platform where it had been left until its disposal. The purchase was made in the latter part of the week, perhaps Friday or Saturday, and the cotton sold was to be billed and shipped out the following Monday.

The above is doubtless the interpretation placed on the evidence by the court below, and while the evidence is not clear, it seems to be sufficient to support that interpretation. This being the case, the Smith Gin Company was more than a gratuitous bailee and held the cotton in trust, not only for the farmer for whom it had ginned the cotton, but also for the purchaser of the same. No direct benefit resulted to the gin company by reason of the storage of the cotton on its platform and possession thereof until the cotton was sold and delivered to the shipper, but there was an indirect benefit in that the indulgences by the gin company created an inducement for having the cotton ginned at its ginnery, which was a sufficient consideration to support its relation as bailee for hire. The result, therefore, was that the gin company

was charged with the duty of using ordinary care for the preservation of the cotton.

Appellant contends that the appellee must fail in this action because it was not shown that the gin company was guilty of any negligence in connection with the fire which destroyed the cotton while on its platform. This suit, however, is not one against the gin company, but against the appellant insurance company which did not insure against the negligence of the gin company, but against any possible or probable contingency for which the ginner might be liable. It is, therefore, not necessary for recovery by the appellee, for whose benefit the cotton was insured, to prove any negligence on the part of the custodian. This construction seems to have been placed on the policy by the insurer, its agent acknowledging liability to the farmers whose cotton was destroyed and merely contending that its liability ceased when the cotton was sold.

In construing a policy insuring freight cars of every description, the property of other railroads, firms, individuals or corporations "for which the assured are, or may be, liable" it has been said: "The proper construction of the policy in this respect is that all freight cars consumed by fire while on the line of the appellee's road, and in its care and custody, with respect to which it had some duty to perform of such nature that it might be charged with legal liability to account to the owners therefor, or to be subjected to claims and demands to so account, and to possible litigation growing out of such claims and demands, were protected by the policy. The contention that the word 'liable,' incorporated in item 44, means an absolute legal and fixed liability, is not tenable. In Webster's dictionary the word 'liable' is said to refer to a future possible or probable happening which may not actually occur. And the same lexicographer further defines the word as follows: 'Exposed to a certain contingency or casualty, more or less probable.' The word, as used in the policy, does not signify a perfected or fixed legal liability, but rather a condition out of which a legal liability may arise." *Home Ins.*

*Co. of New York* v. *Peoria & P. U. Ry. Co.,* 178 Ill. 64, 52 N. E. 862.

Among further authorities in point are *California Ins. Co.* v. *Union Compress Co.,* 133 U. S. 387, 10 S. Ct. 365, 33 L. Ed. 730; 26 C. J., chapter on Fire Insurance, §§ 82 and 84.

We have examined the cases relied on by the appellant and cited in its brief holding that a gratuitous bailee is liable only for gross negligence. These cases, however, were not based on any contract of insurance, but were actions where the bailor sued the bailee for negligent loss of property. In the first case cited, *Bertig* v. *Norman,* 101 Ark. 75, 141 S. W. 201, Ann. Cas. 1913D, 943, the principle is announced that to constitute a contract of bailment there must be a contract expressly entered into or one arising by implication growing out of delivery of property to the party entrusted with its care, and an acceptance of it by him, and where goods are lost the burden does not rest upon the bailee to explain their loss where he does not have exclusive possession of the property at the time of the loss. In the case of *Strange* v. *Planters' Gin Company,* 142 Ark. 100, 218 S. W. 188, the owner of cotton sued the ginner to recover for its loss where it had been left on the gin yard solely for the accommodation of the owner. The court held that the ginner would be liable only for gross negligence.

In the case of *Rollins* v. *East St. Louis Cotton Company,* 144 Ark. 146, 221 S. W. 452, which was an action by the owner of cotton to recover for its loss while on the platform of the ginner, recovery was denied, the owner having accepted a receipt by which he released the ginner from all further responsibility. It appears that the cotton was left on the platform for the special benefit of the owner and was covered by blanket insurance carried by the ginner, but this did not create any liability on his part to the owner without a showing that the cotton was lost through the gross neglect of the ginner, after the receipt had been accepted.

This review of the cases cited makes it plain that they have no application to the questions presented in the case at bar.

The second contention is that the judgment is excessive. This is based on the theory that under the contract of insurance the appellant would be liable for only three-fourths of the value of the cotton lost, and, the appellee having demanded a greater amount, the appellant is not liable for a penalty and attorney's fees. This contention must be sustained. It is true, the original policy was not offered in evidence, but at the instance of appellee a policy was introduced which appellee proved was a standard form with identical provisions to that on which suit was brought. Among the provisions of the policy was one providing that where loss occurred the insurer's liability was restricted to an amount not to exceed three-fourths value of the property lost or destroyed. The trial court, therefore, erred in entering a judgment of the full value of the property, penalty and attorney's fee, and to that extent the judgment is reversed. In other respects the judgment is affirmed. It being uncertain when proof of loss was made and whether or not accrued interest was included in the judgment, the clerk will, therefore, enter a judgment here for an amount equal to three-fourths of the amount of the judgment of $2,198.57 for the property destroyed with interest thereon at six per cent. from the date of the judgment in the court below.