BANK CREDIT LIFE INSURANCE COMPANY OF
ARKANSAS *v.* PINE BLUFF NATIONAL BANK

5-5092                                                      448 S. W. 2d 333

Opinion delivered December 22, 1969

*John F. Gibson, Sr.* and *Walker & Campbell,* for
appellant.

*Dickey, Dickey & Drake,* for appellee.

FRANK HOLT, Justice. The appellant refused to pay to appellee a claim based upon a group life insurance certificate issued by the appellant. The trial court, sitting as a jury, found that the appellant was liable to the appellee for the amount of the certificate. Judgment was accordingly rendered for $1,131.95, $135.83 statutory penalty, $350 attorney's fee, together with 6% interest. From that judgment comes this appeal.

For reversal appellant first contends that the appellee had no insurable interest and the trial court erred in not directing a verdict for the appellant. We find no merit in this contention. The appellant contracted with A. M. Johnson, an automobile dealer, to "procure and submit applications" for group life insurance from his customers for the appellant. Mr. Johnson's business name was Abb Johnson Motor Company, Pine Bluff, Arkansas. On May 6, 1966, Mr. Johnson sold J. R. Palmer a truck. In payment of the $1,278 balance Mr. Palmer signed a combined installment contract and promissory note payable to Mr. Johnson. At the same time Mr. Palmer was issued one of appellant's group credit life insurance certificates in the amount of $1,278. This certificate shows Mr. Palmer as the insured and the appellee, Pine Bluff National Bank, as creditor under the 30-month installment contract. The certificate was countersigned "Abb Johnson by Ed Bardwell, Company Agent." Bardwell, an employee of Johnson's, had similarly signed certificates previously as appellant's agent. The appellee bank purchased, with recourse, the contract and note. The certificate of insurance was also delivered to appellee as creditor and principal beneficiary. Mr. Palmer died on May 28, 1966, at 62 years of age.

Ark. Stat. Ann. § 66-3204(1) (Repl. 1966) provides in part: "Any individual of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of any person." This is the controlling portion of the statute in the case at bar. We agree with the trial court when it stated:

"* * * This insurance policy was written in order to pay this indebtedness, I think, in case the man died." Mr. Palmer, the insured, accepted the insurance, signed the certificate, paid the premium and was the owner of the certificate. As previously indicated, appellee bank is designated as the creditor and principal beneficiary. His estate was the contingent beneficiary. He had a right to designate appellee as his creditor and primary beneficiary. It is obvious that these certificates of insurance were supplied to appellant's agent with full awareness that a purchaser's installment contract, additionally secured by a credit life insurance certificate, would subsequently be assigned and utilized in the channels of commerce.

Appellant asserts there was misrepresentation by the insured in the application and issuance of the certificate to him and that "the agent joined in wrongful collusion" in securing this certificate. In support of this contention the appellant offered evidence that Mr. Palmer signed the statement that he had "read the limitations and reductions on the reverse side of this certificate;" that Mr. Palmer and Mr. Johnson, the agent, both knew when this certificate was issued that Palmer had another one of appellant's certificates outstanding which was issued to him by Johnson about a year previously on a 36-month installment contract. It is undisputed that this first certificate was issued to Palmer in the amount of $2,520.70 in connection with the sale of another vehicle by Johnson to Palmer. The total credit life insurance issuable by appellant for anyone in Palmer's age group, according to both certificates, was limited to $2,000. Thus, it is argued this second certificate was in excess of the insurable limits since the first one was unpaid or outstanding. This first certificate, which exceeded the insurable limit, was, however, reinsured, accepted and paid by the appellant to another bank. Johnson testified that he didn't know whether this first certificate of insurance was still in effect at the time of the issuance of the second certificate. We agree with

the appellee that "if appellant had previously accepted a certificate on the life of J. R. Palmer which on its face was in excess of the applicable limits, how can it now argue collusion and conspiracy because of the issuance of another certificate to J. R. Palmer in excess of the policy limits?" There was no concealment or misrepresentation by the insured or the agent contained in the certificate of insurance.

Appellant next argues that its agent cannot validly bind the appellant on the certificate of insurance which insures the interest or property of its agent. Appellant cites as a rule of law that an insurer's agent cannot issue a binding policy that covers his own property without the knowledge, consent or acquiescence of the insurer. We find no merit in this contention. This certificate of insurance insured the life of Mr. Palmer and not the property of appellant's agent.

The appellant also asserts that the findings of the trial court are not supported by substantial evidence. We cannot agree. In addition to the evidence we have discussed, there was also evidence presented and the court found that the appellee bank had no knowledge about "these secret agreements of instructions to Mr. Johnson. They had this type of insurance for sale and this bank wanted it and who could they go to other than their [appellant's] designated agent to buy it." It is true that when Mr. Palmer died the appellant had not yet received the application and payment of the premium and upon receipt the application and premium were declined. However, there was evidence that the customary business practice between the appellant and its agent was to permit its agent to send in once a month, between the first and tenth, all applications with the total premiums collected. The handling of this certificate conformed to that established procedure. Mr. Johnson had told Mr. Palmer that he was insured. In the past the appellant had accepted Mr. Palmer's certificate with a face amount in excess of the limitation,

the excess being reinsured by appellant. The court could very well find from the evidence that appellant was not enforcing the limitation contained in the certificate as to the insurable limits. A condition inserted in a policy for the benefit of the insurer can be waived by it. *Mid-South Ins. Co. v. Dellinger,* 239 Ark. 169, 388 S. W. 2d 6 (1965). We cannot agree with the appellant that the findings of the court are not supported by substantial evidence. The familiar rule is that where there is any substantial evidence to support the findings of the trial court, sitting as a jury, we must affirm.

The judgment is affirmed with an additional allowance of $300 for attorney's fee for this appeal.

Affirmed.

FOGLEMAN, J., concurs.