## HOME MUTUAL FIRE INS. CO. *v.* Edward N. RILEY

5-5894                    480 S.W. 2d 957

### Opinion delivered June 5, 1972

*East & Storey,* for appellant.

*Thomas B. Tinnon Professional Association* by: *John A. Crain,* for appellee.

Lyle Brown, Justice. Appellant Home Mutual Fire Insurance Company denied liability under a fire policy

by virtue of a nonoccupancy clause. The appellee, insured, was awarded judgment, apparently on the grounds of waiver and estoppel. The principal point for reversal is that the court erred in refusing to grant appellant's motion for a directed verdict.

Appellee is a veterinarian in Mountain Home and he owned a rent house which was next door to his clinic. Home Mutual insured the house against loss by fire in the amount of $3,500. One of the standard provisions in the policy was that there would be no liability for loss if the described property remained unoccupied for a period beyond thirty days. The tenant moved from the house on May 29, 1970, and the house burned on July 3, or thirty-four days after being vacated.

Some events transpired in June which give rise to appellee's claim of waiver. In early June 1970, Dr. Riley moved some x-ray equipment into the house, anticipating that he would use the house henceforth as a part of his clinic. On or about June 14 Dr. Riley made known to appellant's local agent in Mountain Home that he wanted to insure the equipment in the sum of $3,000. Dessie Pitts, the local agent, addressed a memorandum to appellant's Paul Peevy at the home office in Springdale:

Please issue endorsement to the above captioned policy adding the following: $3,000 on x-ray equipment. Dr. Riley has moved his tenant out of this house and it is adjacent to his clinic and he needs $3,000 on the x-ray equipment he has in the house. The house will be used as a part of his clinic now if you need to re-rate this.

Paul Peevy replied under date of June 26 that Home Mutual would not be able to furnish the desired coverage on the x-ray equipment. Dessie Pitts notified Dr. Riley, appellee, of the decision of the home office. She was instructed to get the coverage on the machinery from some other company and, if necessary, to transfer the existing insurance on the building to the company which issued the machinery insurance. Mrs. Pitts was in

the process of carrying out those instructions when a family emergency arose that required her presence in Fayetteville. Before she was able to procure the needed insurance, the house burned. The house and contents were a total loss.

Mrs. Pitts testified that, being in charge of a general insurance agency at Mountain Home, she was agent for Home Mutual and also a general agent for them. "I did have authority to bind the company. I have always had it, - - -binding authority. Mr. Peevy advised me of my authority." She testified that when she received notice from Home Mutual that coverage on the machinery was denied, she got in touch with appellee. "I told him that he had insurance on the building, period, but that they denied it on the equipment." That was only a matter of days before the house burned.

Paul Peevy, president of Home Mutual, testified that upon receipt of proof of loss of the fire he went to Mountain Home. He admitted that he told appellee he would be in receipt of a check in about two weeks. However, he said further conversation revealed that the house had been vacant for more than thirty days and that is when I decided that I had better look into it."

The nonoccupancy clause, being for the benefit of the insurer, may be waived by it. *Aetna Life Ins. Co.* v. *Duncan,* 165 Ark. 395, 264 S.W. 835 (1924); *Webster* v. *Telle,* 176 Ark. 1149, 6 S.W. 2d 28 (1928); *Bank Credit Life Ins. Co.* v. *Pine Bluff Nat. Bank,* 247 Ark. 922, 448 S.W. 2d 333 (1969).

This court will grasp any circumstances which indicate an election to waive a forfeiture. In *American Life Ass'n.* v. *Veden,* 164 Ark. 75, 261 S.W. 320 (1924), we said:

The doctrine is firmly established by the highest courts in this country, and approved by us in numerous cases, that "forfeitures are not favored in law," and that "courts are always prompt to seize hold of any circumstances that indicate an election to waive

a forfeiture, or an agreement to do so, on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop, and ought to estop, the company from insisting on a forfeiture, though it might be claimed under the express terms of the contract."

To the same effect see *Service Fire Ins. Co.* v. *Payne,* 218 Ark. 499, 236 S.W. 2d 1020 (1951). Approaching the facts and circumstances in the case at bar in the light of *Veden* and *Payne* we cannot say there was no substantial evidence of waiver and estoppel. Perhaps no single act, standing alone, justifies that conclusion; however, when totality of activities is viewed in a light most favorable to the verdict, we think our conclusion is proper. The factors which point to waiver and estoppel are these:

(1) In the June 14 memo, Dessie Pitts to Paul Peevy it was pointed out that "Dr. Riley has moved his tenan out of this house. . ." In his reply Mr. Peevy made nc mention of the nonoccupancy requirement, notwithstanding his admission on cross-examination that "the occupancy clause occurred to me."

(2) When Dessie Pitts notified Dr. Riley that his application for insurance on the machinery had been declined, she assured him he still had coverage on the residence. At that very moment the house had been vacant for a period very close to thirty days. Again there was no mention of the nonoccupancy clause.

(3) When Mr. Peevy interviewed appellee at Mountain Home incident to the fire, Peevy advised appellee that he would receive a check within some two weeks. Peevy said that after he made that statement the insured mentioned that the house had been vacant. Peevy said that statement raised in his mind the question of possible

forfeiture, yet Peevy made no mention of a possible forfeiture to the insured.

(4) The premium on the insurance policy was paid up until May 1, 1971. If the company desired to forfeit the policy for nonoccupancy the insured was entitled to a remittance of some ten months unearned premium. Yet we are unable to find in the record any evidence of a refund under the policy at issue; nor is there any record of tender.

Appellant advances one other point for reversal. At the trial appellant asked that the witnesses be placed under the rule. At the same time appellant requested that the official of the insurer be relieved from the rule in order to assist counsel in the trial of the case. The court denied that request because counsel for appellee refused to agree to the exception. There was no error in the court's ruling. In the first place appellant points to no prejudice that resulted from excluding the official. In the second place, whether an exception to the exclusion is granted rests within the sound discretion of the trial court. *Randolph* v. *McCain,* 34 Ark. 696 (1879). See *St. Louis I.M. & S. Ry.* v. *Pate,* 90 Ark. 135, 118 S.W. 260 (1909).

Affirmed.