**Richard M. COURSON, Appellee,**

v.

**MARYLAND CASUALTY COMPANY, Appellant.**

**Nos. 72-1480, 72-1481.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1973.

Decided March 20, 1973.

Dennis L. Shackleford, El Dorado, Ark., for appellant.

Richard E. Griffin, Crossett, Ark., for appellee.

Before GIBSON and ROSS, Circuit Judges, and BENSON, Chief District Judge.

ROSS, Circuit Judge.

Richard Courson (Courson) brought this action against Maryland Casualty Company (Maryland) in the Circuit Court of Ashley County, Arkansas, to recover the sum of $10,000.00 under the uninsured motorist clause of an automobile insurance policy theretofore issued to Courson by Maryland. Maryland removed the case to the United States District Court for the Western District of Arkansas pursuant to the provisions of 28 U.S.C. § 1441. The trial court entered judgment in favor of Courson for the sum of $10,000.00 plus penalty and attorneys fees and Maryland appealed to this Court. We affirm but make one modification to the judgment.

On August 23, 1969, Courson was involved in an automobile collision with a car driven by Earnest Green (Green), an uninsured motorist. The Courson car and the Green car were traveling in opposite directions and a collision occurred shortly after a third car driven by Robert Crane, Jr. (Crane) had entered the highway from a side road at a point between the Courson car and the Green car. Crane was insured by State Farm Mutual Insurance Company (State Farm).

Courson brought suit in state court against both Green and Crane on February 4, 1970, and at that time advised Maryland's claim agent of the suit, "in order that they [Maryland] may properly defend in behalf of Earnest Green and Robert Crane." (At this point Courson's attorney erroneously believed that Crane was also an uninsured motorist.) On February 6, 1970, Maryland's agent acknowledged receipt of the letter and stated that "We are notifying the Maryland Casualty Company, the insurance carrier for Mr. Courson, this date."

On May 4, 1970, Courson's lawyer advised Maryland's claim agent that Green's attorney had advised that Green was uninsured, that the case was set for trial on June 9, 1970, and that he was interested in settling the case. He asked Maryland to contact State Farm, Crane's carrier, to see if some kind of settlement could be made. He received no response from Maryland's claims representative. On May 25, 1970, he again wrote the claims representative, advising him of the impending trial and giving him the name of the attorney for Crane. He further stated that "My investigation reveals that probably the primary liability lies with the uninsured defendant, Earnest Green." He then asked the claims representative to advise him concerning Maryland's intentions in the matter. Again he received no response. Courson's lawyer wrote the claims representative again on June 1, 1970, asking for a response to his earlier letter, but received none.

Prior to trial, Crane and his insurance carrier settled the claim of Courson against Crane for $5,000.00 and Courson executed a release and indemnity agreement without further notice to Maryland and without Maryland's consent. On June 9, 1970, Courson recovered a judgment against Green for $16,000.00 and promptly demanded payment of $10,000.-00 by Maryland under the uninsured motorist clause in the policy Maryland had issued to Courson. Maryland declined on the alternate grounds that (a) the policy was inapplicable under the exclusion provision since the insured made a settlement with another person without the written consent of the insurer; (b) any amount payable under the uninsured motorist clause should be reduced by the amount recovered from Crane's insurance carrier under Ark.Stat.Ann. 66–4006 (Repl.1966) and under the express provisions of the policy; and (c) that in any event, Maryland was entitled to recover or set off the sum of $2,074.55 to which the Arkansas Workmen's Compensation Commission had theretofore determined Maryland was entitled to receive in subrogation, from the settle-

ment of $5,000.00 obtained by Courson from Crane's insurance carrier.[1]

In United States District Court, after Maryland had interposed these defenses to Courson's action on the uninsured motorist provision in his policy, the trial court retried the issue of negligence of all of the parties to the accident and found that the accident was caused *solely* by the negligence of the uninsured motorist, Green. It rejected Maryland's defenses and allegations regarding the credits, except its claim for a setoff for the amount which the Arkansas Workmen's Compensation Commission had already found to be owing to Maryland (as compensation carrier) as a result of Courson's settlement with Crane. However, in a supplemental opinion, the court reconsidered the latter setoff, and also disallowed it. The court found that Courson's damages were in the amount of $15,657.36, reduced that amount by the $5,000.00 which Courson received from Crane in settlement, and found that Courson was entitled to $10,657.36. Recognizing that the uninsured motorist policy was limited to $10,000.00, judgment was entered accordingly in that amount, plus 12 percent statutory penalty and attorneys fees.

## SETTLEMENT EXCLUSION PROVISION

The uninsured motorist provision of the policy contained the following exclusion:

"I. COVERAGE U—UNINSURED MOTORISTS

(Damages for Bodily Injury)

.    .    .    .    .    .

Exclusions

This insurance does not apply: (a) to bodily injury to an insured with respect to which such insured,

his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor . . . . "

The trial court held this policy provision to be contrary to public policy and therefore invalid citing MFA Mutual Ins. Co. v. Bradshaw, 245 Ark. 95, 431 S.W.2d 252 (1968), and MFA Mutual Ins. Co. v. Lovins, 248 F.Supp. 108 (E. D.Ark.1965). In *Lovins* the United States District Court for the Eastern District of Arkansas had determined that a clause providing forfeiture of insurance coverage, by an insured who prosecuted a suit to judgment against an uninsured motorist without the written consent of the insurer, was against the public policy of the state and void. In *Bradshaw, supra*, 431 S.W.2d at 254, the Supreme Court of Arkansas indicated its agreement with that holding.[2] However, in this case the exclusion is claimed to result from *settlement* with an insured motorist without the consent of the insurer, which is a different situation from that which was present in *Lovins* and in *Bradshaw*.

■ Although the "settlement exclusion," by its very terms is referred to as an exclusion, it is, in fact, a forfeiture. All coverage under the uninsured motorist policy provisions is "excluded" in the event that a settlement is made without the consent of the company. Under the law of Arkansas as in nearly all states, forfeitures are not favored. Home Mutual Fire Ins. Co. v. Riley, 480 S.W.2d 957 (Ark.1972). *See generally*, 1 R.Anderson, Couch on Insurance 2d § 15:95 (1959). In *Riley, supra*, 480 S.W.2d at

1. Maryland also insured Courson's employer, R. M. Courson, Inc., for its workmen's compensation liability and had paid out workmen's compensation benefits to Courson in the sum of $5,305.75.

2. In *Bradshaw* the Supreme Court of Arkansas held valid a policy paragraph providing that a judgment obtained against

an uninsured motorist without the written consent of the insurer was not conclusive between the insured and the insurer. Based on that decision, the trial judge in this case retried the issues of liability and damages and determined that the uninsured motorist, Green, was liable to Courson in the sum of $15,657.36.

958–959, the Supreme Court of Arkansas stated the rule as follows:

"This court will grasp any circumstances which indicate an election to waive a forfeiture. In American Life Ass'n v. Vaden, 164 Ark. 75, 261 S.W. 320 (1924), we said:

The doctrine is firmly established by the highest courts in this country, and approved by us in numerous cases, that 'forfeitures are not favored in the law,' and that 'courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the Company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.' "

■ In this case, Courson gave Maryland every opportunity to participate in the settlement negotiations with Crane and his insurance carrier. His requests for participation were completely ignored and Courson was entitled to assume that if any objection to the settlement was going to be made by Maryland, it would have been communicated prior to the time he attempted to collect on the judgment entered on June 9, 1970. We are satisfied that the Supreme Court of Arkansas would hold this failure to act constitutes sufficient proof of circumstances indicating "an election to waive a forfeiture." Home Mutual Fire Ins. Co. v. Riley, *supra*, 480 S.W.2d at 958. *See also* Pickering v. American Employers Ins. Co., 282 A.2d 584 (R.I.1971); Volkswagen Ins. Co. v. Taylor, 201 So.2d 624 (Fla.App.1967); Allstate Ins. Co. v. Pietrosh, 85 Nev. 310, 454 P.2d 106 (1969).

## CREDIT AGAINST POLICY LIMITS FOR $5,000 SETTLEMENT

The lower court reduced the amount of damages that it found Green was liable for, by the $5,000.00 settlement sum which Courson received from Crane. However, since the total damages were over $15,000.00, Maryland was still found to be liable for the full amount of the policy limits of $10,000.00. The provisions under which Maryland claims reduction from the policy limits for the settlement are the following:

"III. LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, the company's liability is limited as follows:

. . . . . .

(b) *Any amount payable* under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by

(1) all sums paid on account of such bodily injury by or on behalf of

. . . . . .

(ii) *any other person* or organization *jointly or severally liable* together with such owner or operator for such bodily injury, including all sums paid under the bodily injury liability coverage of the policy . . . ."

. . . . . .

"VI. ADDITIONAL CONDITIONS

. . . . . .

G. *Trust Agreement* In the event of payment to any person under this insurance:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization *legally responsible* for the bodily injury because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have

against such other person or organization because of the damages which are the subject of claim made under this insurance;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights . . . ." (Emphasis added.)

■ The provisions of the section entitled "LIMITS OF LIABILITY" are clear in that they require a reduction of the amount payable under the terms of the insurance equal to the amount of any payments made on behalf of another person who is *jointly* or *severally* liable. The purpose of such a provision is undoubtedly to eliminate the possibility that the insured will recover from both the insurance company and another person "legally responsible." Maryland does not appear to contend that the liability and damage determination made by the district court is not binding on it, nor does it dispute the substance of that determination. The district court specifically held that:

"By this ruling the Court concludes there is substantial evidence from the testimony of the witnesses and exhibits that the accident was not due to the negligence of Robert E. Crane, Jr., notwithstanding, the agreed settlement and release agreement in lieu of a trial in the state court."

Arkansas has adopted the general rule that contracts, if clear and unambiguous, should be enforced as written, giving the language the common and ordinary meaning under the situation, and that words of limitation are to be construed strictly against the insurer. Phillips v. Midwest Mutual Ins. Co., 329 F.Supp. 853 (W.D.Ark.1971); Washington Fire and Marine Ins. Co. v. Ryburn, 228 Ark. 930, 311 S.W.2d 302 (1958). Although the word "liable" has been construed by the Arkansas Supreme Court to mean less than "an absolute le-

gal and fixed liability," Pacific Fire Ins. Co. v. Murdoch Cotton Co., 193 Ark. 327, 99 S.W.2d 233, 235 (1936), the district court's order seems to preclude a finding in this situation that even "a condition out of which legal liability may arise" exists. *Id.* In our opinion a clear reading of this entire provision therefore precludes Maryland from reducing the policy limits by the amount of the settlement.

■ The same reasoning applies to the *"Trust Agreement"* clause in the policy. It refers to a credit for the proceeds of any settlement or judgment resulting from the exercise of a right to recover from a person or organization *"legally responsible for the bodily injury because of which such payment is made."* Thus, in view of the district court's determination that Crane was not in any way legally responsible for the accident, Maryland is not entitled to any settlement credit under this section of the policy.

## "SETOFF" FOR CRANE SETTLEMENT

Maryland was not only Courson's uninsured motorist carrier, but was also the workmen's compensation carrier for Courson's company, Richard M. Courson, Inc., and as such paid a sum of $5,305.75 to Courson for the injuries received in the accident in issue. When Courson settled with Crane for $5,000.00, the Arkansas Workmen's Compensation Commission found that after reducing the $5,000.00 by the cost of collecting the settlement sum, Courson was entitled to one-third ($1,037.28) and Maryland, as compensation carrier, was entitled to two-thirds ($2,074.55).[3] However, since the entire settlement had been sent to Courson, Maryland was merely credited with the sum owed it, against "future liability which might accrue to them by reason of the aforesaid injury." Mary-

---

3. This finding was made pursuant to Ark. Stat.Ann. 81–1340 (Repl.1960) which provides that the workmen's compensation insurer is entitled to be subrogated to the rights of the insured as to two-thirds of the amount of such a settlement after deducting the reasonable cost of collection.

land contends that this amount should now be credited against the amount of any judgment rendered against it on its uninsured motorist coverage.

Courson maintains that this issue is not properly before this Court as the lower court was not presented with it, but only with the question of whether workmen's compensation benefits can directly reduce uninsured motorist coverage. It is true that the issue of reduction of the uninsured motorist coverage by the amount of the workmen's compensation benefits was presented by Maryland and was properly rejected by the trial court on the basis of Travelers Ins. Co. v. National Farmers Union Property and Casualty Co., 252 Ark. 624, 480 S.W.2d 585 (1972), but Maryland *also* specifically raised the "setoff" claim in its amended answer and the lower court spoke to that issue directly in initially granting the setoff. The trial court held:

"[P]ursuant to Act 40 of the Workmen's Compensation Act, supra, and the order entered September 17, 1971, by the Workmen's Compensation Commission approving the settlement between the plaintiff and the third-party as provided by the section that the defendant, Maryland Casualty Company, is entitled to the credit of $2,074.-55 against any future liability by reason of the plaintiff's injury. This, therefore, reduces the judgment which the plaintiff is entitled to have against the defendant to the amount of $7,925.45. An order will be entered accordingly."

Subsequently, in a supplemental opinion, and after Courson filed a motion to modify the judgment, the trial court disallowed the credit to Maryland on the basis that the Arkansas Supreme Court had subsequently ruled on the issue in Travelers Ins. Co. v. National Farmers Union Property and Casualty Co., *supra*, 480 S.W.2d at 588–589. That case involved an action by the administratrix of a deceased's estate against an insurer

to recover under uninsured motorist coverage which included a clause permitting the insurance company to reduce the amount payable thereunder by any workmen's compensation benefits received by the insured. The workmen's compensation insurer intervened seeking subrogation by virtue of the payments that it had made to the deceased. The court held: (1) the clause in the uninsured motorist policy provisions which attempted to reduce the amount payable under that policy by the amount of any workmen's compensation benefits received by the insured on account of the bodily injury, was void and unenforceable; and (2) the workmen's compensation carrier is not entitled to subrogation by way of lien on the amounts which the employee or his dependents may receive by virtue of the uninsured motorist coverage.

In the *Travelers* case, *supra*, the compensation carrier was attempting to procure a first lien upon two-thirds of the net proceeds of the insured's recovery from the uninsured motorist carrier under Ark.Stat.Ann. 81–1340(a)(1) (Repl. 1960) and the court held that such a broad reading of that section was not countenanced; that the recovery on uninsured motorist coverage is not a tort recovery subject to the lien provided in that section; and that the compensation carrier has no right to expect the employee to purchase uninsured motorist coverage so as to supplement the carrier's statutory lien. Travelers Ins. Co. v. National Farmers Union Property and Casualty Co., *supra*, 480 S.W.2d at 588–589.

The trial court characterized Maryland's attempt to set off the portion of Courson's settlement with Crane, which the Arkansas Workmen's Compensation Commission found should be credited against future liability of Maryland, as an assertion of a lien through the right of subrogation under Ark.Stat.Ann. 81–1340 (Repl.1960) against the uninsured motorist carrier (also Maryland) and therefore it applied *Travelers*.

Although the *Travelers* decision undoubtedly required the lower court to deny any reduction from the uninsured motorist coverage for amounts of workmen's compensation benefits received by Courson from Maryland, as compensation carrier, it does not, in our opinion, have any effect upon Maryland's right to claim a portion of the settlement with Crane pursuant to the statute. Courson is entitled to the full $10,000.00 provided for by the uninsured motorist coverage but Maryland is entitled to $2,074.55 from the settlement with Crane as a result of the determination of the Commission that this amount was Maryland's share of the Crane settlement pursuant to the Arkansas statute permitting this allocation. We do not read the *Travelers* case as rejecting all claims that a compensation carrier may have against an employee who also has uninsured motorist coverage, but only as forbidding the compensation carrier from attempting to claim a lien by subrogation for workmen's compensation paid to an employee on a percentage of the proceeds of the employee's uninsured motorist coverage. In his brief, Courson does not contend that *Travelers* alone would disallow this setoff, but rather relies on the fact that Maryland did not present this issue to the lower court.

The record is not clear as to whether or not Maryland will be able to recover the $2,074.55 from the future workmen's compensation payments by Maryland and the trial court did not, except by implication in its original opinion, reach the question as to whether or not the $2,074.55 setoff pleaded by Maryland is a proper counterclaim under Fed.R.Civ. P. 13. For this reason we do not determine those questions at this time. We only decide that the case of Travelers Ins. Co. v. National Farmers Union Property and Casualty Co., *supra*, is not a bar to the recovery by Maryland of the $2,074.55 portion of the Crane settlement and we remand the case to the trial court for a re-determination of whether this amount should be allowed as a setoff in this action under Fed.R. Civ.P. 13. With this modification, the judgment of the trial court is affirmed.